UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-8553
_____


UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

                    versus

DAVID GREGORY SURASKY,

                              Defendant-Appellant.

_____

Appeal from the United States District Court for the
Western District of Texas
_____
(October 19, 1992)


Before BROWN, GARWOOD, and DeMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

David Gregory Surasky (Surasky) pleaded guilty to charges of attempting to escape from custody and conspiring to do so. He now appeals his thirty-month sentence on the ground that the district court erred in applying the United States Sentencing Guidelines (U.S.S.G. or Guidelines). Specifically, Surasky objects to the district court's decision, on the one hand, to enhance his base offense level for obstruction of justice and, on the other hand, not to reduce it for acceptance of responsibility. We vacate and remand.

## Facts and Proceedings Below

Surasky, along with two other inmates, made an aborted effort to escape from the Hays County Jail in San Marcos, Texas, where he was being held in custody pending resolution of charges extraneous to this appeal. Using a metal tool which had been fashioned from an orthopedic brace and three hacksaw blades which had been smuggled into the jail, the would-be escapees had managed to remove two panes of plexiglass from a security window in the rear door of their cell block. The men had also manufactured a crude ladder using several hundred yards of dental floss, cardboard cylinders from salt and pepper shakers, and strips of cloth torn from a mattress cover. The plot was uncovered after jail officials received an anonymous tip that an escape attempt was being planned in the cell block in which Surasky was being held.

When the damaged window was discovered in the early morning hours of April 29, 1991, jail officials questioned each inmate in the cell individually. Suspicion fell on Surasky because he and one of his co-conspirators in the escape attempt, Arthur Harris Stier, occupied the two bunks nearest to the damaged window. However, when questioned, Surasky stated that he had nothing to do with the escape attempt. Nevertheless, blisters and cuts were found on Surasky's hands and other inmates told jail officials that they had witnessed Surasky's attempts to remove the window. Thus, on June 18, 1991, Surasky pleaded guilty to attempting to escape from custody in violation of 18 U.S.C. §§ 751 and 752, and conspiring to do so in violation of 18 U.S.C. § 371. When interviewed that same day by the probation officer preparing his

2

Presentence Report (PSR), Surasky admitted his guilt and expressed remorse at his behavior.

In the PSR, the probation officer assigned Surasky a base offense level of thirteen under U.S.S.G. § 2P1.1(a)(1) and recommended that Surasky receive a two level decrease for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. The PSR did not recommend an upward adjustment for obstruction of justice under U.S.S.G. § 3C1.1. After objections by the United States, however, the PSR's acceptance of responsibility recommendation was retracted in an addendum. The amended PSR still contained no obstruction of justice recommendation. At the sentencing hearing, the district court sustained the government's objection and denied Surasky an adjustment for acceptance of responsibility. The court also enhanced Surasky's base offense level by two levels for obstruction of justice on the ground that Surasky had lied about his involvement in the escape attempt when first questioned by jail officials.

So enhanced, Surasky's total offense level was fifteen which, when combined with a criminal history category of IV, produced a sentencing range of thirty to thirty-seven months. The district court sentenced Surasky to a term of thirty months imprisonment followed by three years of supervised release, a fine of $5,000, and a special assessment of $100. Surasky objected to the district court's sentencing decisions and now brings this timely appeal.

## Discussion

We first consider whether the district court properly enhanced Surasky's base offense level for obstruction of justice. The district court's decision must be upheld unless it is contrary to law or clearly erroneous. *See, e.g., United States v. Edwards*, 911 F.2d 1031, 1033 (5th Cir. 1990); 18 U.S.C. § 3742(e). The Guidelines provide that a defendant's offense level is to be enhanced if he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. During his initial interview with jail officials, Surasky stated that he had nothing to do with the escape attempt. The government argues that this was a false statement, punishable as obstruction of justice. We disagree.

The proper scope of the Guideline's obstruction of justice provision is discussed in the Commentary to section 3C1.1:

> "This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), . . . is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or statements by the defendant, such testimony or statements should be evaluated in a light most favorable to the defendant." U.S.S.G § 3C1.1 application note 1.

The record does not reveal the exact language that Surasky used to exculpate his complicity in the escape attempt. The PSR states that when Surasky was first questioned "he stated that he had nothing to do with the escape attempt." PSR ¶ 14, at 5. The government, in a letter objecting to the PSR signed by the Assistant United States Attorney, asserts, without any indication

4

as to the source or precision of the information, that Surasky "stated when questioned that he knew nothing about the escape attempt, nor had he seen or heard anything." This same letter, however, continues by characterizing what Surasky then said as "a materially false statement denying his role in the offense."[1] The district court made no findings as to just what Surasky said. In its brief in this Court, the government argues that "Surasky's denial of guilt was an attempt to obstruct justice."

Given this state of the record, Surasky's statement, when viewed, as it must be, in the light most favorable to him, is fairly described as a mere "denial of guilt" within the meaning of U.S.S.G. § 3C1.1. Accordingly, Surasky's statement cannot provide the basis for an obstruction of justice enhancement.[2] *See United States v. Fiala*, 929 F.2d 285, 289-90 (7th Cir. 1991) (reversing an obstruction of justice enhancement imposed upon a motorist who, when asked by a state trooper if he had anything illegal the car, replied that he did not, even though there was marijuana in the vehicle); *see also United States v. Contreras*, 937 F.2d 1191, 1194 (7th Cir. 1991) (noting that "a simple denial of guiltSQas in pleading not guilty, or saying to an arresting officer, 'I didn't

---

[1] The government's letter does not expressly take issue with the PSR's description of what Surasky then said; nor does the PSR addendum make any further findings in this respect.

[2] We note that not every attempt at self-exoneration by a defendant is privileged from enhancement by U.S.S.G. § 3C1.1. For example, if someone in Surasky's shoes were to say "John Smith did it, not me," when in fact John Smith was not involved, such a statement, we think, would be more than a simple denial of guilt and could be treated as obstruction of justice, assuming that the statement proved to be a significant obstruction or impediment to the investigation. *See infra.*

do anything'SQcannot be the basis for an obstruction enhancement under § 3C1.1.").[3]

Even were we to determine that Surasky's statement was properly found to constitute more than a mere denial of guilt, we would still conclude that an obstruction of justice enhancement was improper. The application notes to U.S.S.G. § 3C1.1 provide a non-exhaustive list of examples of conduct warranting an enhancement for obstruction of justice. The example most directly on point is that of "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." U.S.S.G. § 3C1.1 application note 3(g).[4] However, the Guidelines

---

[3] The denial of guilt exception to U.S.S.G. 3C1.1 finds a rough analog in the so-called "exculpatory no" doctrine established in *Paternostro v. United States*, 311 F.2d 298 (5th Cir. 1962). In *Paternostro*, we stated that an individual does not violate 18 U.S.C. § 1001 (which prohibits the making of false statements to government agencies) by providing "mere negative responses" to inculpatory questions put to him by government investigators. *Id*. at 305. Rather, we held that one must "aggressively and deliberately initiate [a] positive or affirmative statement calculated to pervert the legitimate functions of Government." *Id*. For example, in *United States v. Hajecate*, 683 F.2d 894, 899-900 (5th Cir. 1982), *cert. denied*, 103 S.Ct. 2086 (1983), we held that taxpayers who concealed an off-shore bank account by answering "no" on their income tax returns to a question about foreign assets were not guilty of making a false statement. We have said that the "exculpatory no" doctrine derives "at least in part from latent distaste for an application of the statute that is uncomfortably close to the Fifth Amendment." *United States v. Lambert*, 501 F.2d 943, 946 n.4 (5th Cir. 1974) (en banc). A similar conviction apparently feeds the provision of application note 1 under section 3C1.1 that a defendant does not obstruct justice under the Guidelines merely by responding to an accusation of criminal conduct on his part in the negative. *See United States v. Urbanek*, 930 F.2d 1512, 1515 (10th Cir. 1991) (analogizing U.S.S.G. § 3C1.1's denial of guilt exception to an exculpatory no).

[4] A "materially" false statement is further defined as one

6

also provide as an example of what does *not* constitute obstruction of justice the following: "making false statements, not under oath, to law enforcement officers, unless Application Note 3(g) above applies." U.S.S.G. § 3C1.1 application note 4(b). It should be obvious that, when juxtaposed, the important[5] difference between these two provisions is the language in note 3(g) referring to a "significant[] obstruct[ion] or imped[iment]." Thus, by applying the rule of U.S.S.G. § 3C1.1, and its application notes 3(g) and 4(b), we hold that a false statement made by a defendant to law enforcement officers cannot constitute obstruction of justice unless the statement obstructs or impedes the investigation at issue significantly.

This holding is consistent with our precedents. In *United States v. Rodriguez*, 942 F.2d 899 (5th Cir. 1991) (per curiam), *cert. denied*, 112 S.Ct. 990 (1992), we upheld the application of an obstruction of justice enhancement to a defendant who provided the court with a fraudulent birth certificate. In so doing, we relied upon section 3C1.1's application note 3(c), which advises that a defendant obstructs justice by "producing or attempting to produce

---

that "if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 application note 5. Surasky's denial of guilt was plainly "material" in this sense.

[5]    Of course, the "materiality" requirement of application note 3(g), *see supra* note 5, is also a difference, though one that we think will be relevant in few cases. It is hard to imagine that an *im*material statementSQi.e., one that, in the language of the Guidelines, would *not* "tend to influence or affect the issue under determination,"SQcould more than rarely, if ever, be thought to obstruct justice. Conversely, any statement that significantly obstructs or impedes an investigation is likely to always, or almost always, be material.

a false, altered, or counterfeit document or record during an official investigation or judicial proceeding." However, prior to reaching this conclusion, the *Rodriguez* Court decided that it was unable to uphold the obstruction enhancement on the ground that the defendant had used an alias. As we said, "The fact that [the defendant used an alias] at his arrest and during the police investigation does not support the adjustment because the alias did not *significantly hinder* the investigation." *Id.* at 902 (emphasis added). We based our conclusion on application note 4(a), which states that it is not obstruction of justice for a defendant to "provid[e] a false name or identification document at arrest, except where such conduct actually resulted in *a significant hindrance* to the investigation or prosecution of the instant offense." (emphasis added).

We followed *Rodriguez* in *United States v. McDonald*, 964 F.2d 390 (5th Cir. 1992) (per curiam), where we again concluded that a defendant's use of an alias when he was arrested by police officers did not warrant an obstruction enhancement. As we said in that case, "If McDonald had used his alias only at the time of arrest, enhancement for obstruction of justice might not have been warranted, *absent a showing of significant hindrance*." *Id.* at 392 (emphasis added). To uphold the defendant's obstruction enhancement in *McDonald*, we relied upon the fact that the defendant had used an alias while under oath before a magistrate and in filing an affidavit. We observed that, unlike application note 4(a), application note 3(f), which provides that it is obstruction of justice to provide false information to a judge or magistrate,

8

does not have a significant hindrance requirement. *See id.* at 392-93.

Even though the "significant hindrance" requirement of *Rodriguez* and *McDonald* was derived from application note 4(a) in the context of the use of aliases, we believe that application note 3(g) imposes a roughly similar requirement of significant obstruction or impediment upon cases, such as this one, in which a defendant makes a false statement to law enforcement officials. This should come as no surprise since the use of an alias, after all, is a type of false statement.

The government relies on *United States v. Rogers*, 917 F.2d 165, 168-69 (5th Cir. 1990), *cert. denied*, 111 S.Ct. 1318 (1991), which held that U.S.S.G. § 3C1.1 applies to *attempted* obstructions of justice as well as actual obstructions. *Rogers*, however, was decided before the Sentencing Commission clarified the intended scope of section 3C1.1 with amendments which became effective on November 1, 1990. These amendments included application note 4(a) with its significant hindrance language, as well as application note 3(g) with its significant obstruction or impediment language. *See* UNITED STATES SENTENCING COMMISSION, GUIDELINES MANUAL, appendix C, § 347, at 163-66 (Nov.1991). In light of these amendments, the *Rodriguez* Court determined that *Rogers* was no longer controlling. *See Rodriguez*, 942 F.2d at 901-02.

In this case, the district court accepted, and it is conceded by one and all, that Surasky's denial of guilt did not significantly obstruct or impede the investigation of the escape attempt. Surasky's co-conspirator Stier confessed almost

9

immediately upon the discovery by jail officials of the damaged window (although Stier's initial *mea culpa* did not implicate Surasky). Moreover, jail officials discovered incriminating blisters on Surasky's hands. Finally, some of Surasky's fellow inmates told jail officials that they had witnessed Surasky's escape preparations.

Accordingly, the obstruction of justice enhancement based on Surasky's initial denial of guilt to the investigating jail officials was improper.

The government urges that, even if Surasky did not obstruct justice, the error was harmless because the district court would have imposed the same sentence without the enhancement, thus making remand unnecessary. In *Williams v. United States*, 112 S.Ct. 1112 (1992), the Supreme Court stated that, when an appellate court finds that the Guidelines have been incorrectly applied, "a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, *i.e.,* that the error did not affect the district court's selection of the sentence imposed." *Id.* at 1120-21. We have exercised this option in the past. *See, e.g., United States v. Johnson*, 961 F.2d 1188, 1189 (5th Cir. 1992). It is true that the district court could have imposed the same sentence without the obstruction of justice enhancement. With the enhancement, Surasky's offense level was fifteen which, when combined with a criminal history category of IV, produced a sentencing range of thirty to thirty-seven months. Without the enhancement, Surasky's offense level becomes thirteen, thus yielding a permissible sentencing range of twenty-four to thirty

months.  Moreover, one can find in the record some arguable support for the government's suggestion that it was the district court's intent to give all three defendants the same sentence.  When sentencing Surasky, the district court asked to be reminded what sentence it gave Stier.  It is also true all three men received thirty month sentences.  Nevertheless, we are not sufficiently convinced in this case that the obstruction of justice enhancement was harmless error.  From the record before us, it is not unreasonable to conclude that, upon remand, the district court might well choose to give Surasky a lesser sentence.

In part, we base our decision upon the fact that under the Guidelines it is unusual for a defendant whose sentence has been enhanced for obstruction of justice to receive a reduction for acceptance of responsibility.  The current version of the Guidelines advises that a defendant who receives an obstruction of justice enhancement is entitled to an acceptance of responsibility adjustment only in "extraordinary cases."  U.S.S.G. § 3E1.1 application note 4.[6]  Thus, the errant decision to enhance Surasky's offense level for obstruction of justice well might have prevented the district court from seriously considering whether to give Surasky an acceptance of responsibility adjustment.  We note that there is evidence in the record that could logically persuade a sentencing judge to award Surasky such an adjustment.[7]  Indeed,

_____

[6]     Previous versions of the Guidelines had described the two adjustments as mutually exclusive.

[7]     Despite his initial denial of guilt, Surasky later confessed his crime and expressed regret at what he had done.  PSR ¶ 16, at 5-6.  Of course, a guilty plea does not entitle a defendant to an

11

the initial recommendation of the PSR was that Surasky receive such an adjustment.

Furthermore, the record before us does not clearly support the government's contention that the sentencing judge wanted to ensure that Surasky receive the same sentence as his co-conspirators. To be sure, the district court did inquire about the sentence it had given Surasky and all three defendants did receive the same sentence. But at no point during Surasky's sentencing hearing did the sentencing judge actually say that he wanted Surasky's and Stier's sentences to be the same. Moreover, in sentencing Surasky to thirty months imprisonment, the district court gave him the most lenient sentence in the permissible range. Without the obstruction of justice enhancement, a thirty month sentence becomes the most severe sentence in the permissible guideline range.

## Conclusion

We hold that the district court erred by enhancing Surasky's offense level for obstruction of justice, and we accordingly vacate Surasky's sentence and remand for resentencing, including consideration of whether Surasky should receive an acceptance of responsibility adjustment.[8]

---

acceptance of responsibility adjustment as a matter of right. U.S.S.G § 3E1.1(c). Instead, for a defendant to merit such an adjustment the sentencing judge must be convinced of the sincerity of the defendant's remorse. *See, e.g., United States v. Sanchez*, 893 F.2d 679, 681 (5th Cir. 1990).

[8] We emphasize that we express no opinion about whether Surasky is entitled to such an adjustment. Nor do we reach Surasky's claim raised in this appeal that the district court erred in failing to give him an acceptance of responsibility adjustment in the first instance. We merely hold that upon remand the district court should consider the matter *de novo.*

12

SENTENCE VACATED and CAUSE REMANDED