UNITED STATES of America, Appellee,

v.

Lester JOHNS, Jr., Defendant–Appellee,

Jeanette Kellom, Mark Lavalley,
Darrell Miller, Defendants.

No. 1415, Docket 92–1775.

United States Court of Appeals,
Second Circuit.

Argued April 19, 1994.

Decided June 13, 1994.

**32**

Steven M. Statsinger, The Legal Aid Society, Federal Defender Services Unit, New York City, for defendant-appellant.

Gary G. Shattuck, Asst. U.S. Atty. for the D. of Vermont, Rutland, VT (Charles R. Tetzlaff, U.S. Atty., David V. Kirby, Chief, Criminal Div., U.S. Attorney's Office, of counsel), for appellee.

Before: ALTIMARI, McLAUGHLIN, and JACOBS, Circuit Judges.

JACOBS, Circuit Judge:

Defendant-appellant Lester Johns, Jr. appeals from a sentence imposed in the United States District Court for the District of Vermont (Billings, J.) following his plea of guilty to one count of conspiring to distribute, or possess with intent to distribute, cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846. On December 11, 1992, the district court found that Johns had obstructed justice by lying to the probation officer who prepared the presentence report, and therefore imposed a two-point upward adjustment to the sentencing level under section 3C1.1 of the United States Sentencing Guidelines. Johns was sentenced to 51 months' imprisonment, three years of supervised release, and a special assessment of $50. Johns argues that the only falsehoods attributed to him were denials of guilt and that, under the Guidelines, a sentence adjustment for obstruction of justice cannot be predicated on such denials. We agree, and therefore vacate the sentence and remand to the district court for resentencing.

## BACKGROUND

Johns was arrested on June 25, 1992. He and his co-defendants were charged with a variety of offenses, including conspiracy to distribute or possess with intent to distribute cocaine. The indictment alleged that the conspiracy operated between October 1991 and March 1992, and listed as overt acts three transactions involving Johns. In the first transaction, on December 19, 1991, Jeannette Kellom brought an undercover police officer to Johns's residence in Brattleboro, Vermont. Kellom, out of sight of the officer, purchased 2.83 grams of cocaine from Johns for $275. She immediately resold the cocaine to the undercover officer, telling him that Johns was her source for cocaine.

On February 27, 1992, the officer approached Johns to make another drug buy. Johns first telephoned Gregory Costa in Rhode Island, who told Johns that he could not supply the drugs. Johns next telephoned an individual known to him as "Goofy" in Holyoke, Massachusetts and made arrangements to purchase some cocaine from him. Johns then took $800 from the undercover officer and directed him to drive them to Holyoke, where Johns met with two individuals in another automobile. As Johns and the officer drove back to Vermont, Johns gave the officer one-half ounce of cocaine, telling him that he had purchased a total of one and one-half ounces back in Holyoke.

The third transaction charged in the indictment occurred on March 5, 1992, when the undercover officer went to Johns's residence accompanied by another police officer, who purchased 11.15 grams of cocaine from Johns for $700. This cocaine was allegedly sup-

plied by Gregory Costa, who was present during the transaction.

Along with these three charged transactions, to which he pleaded guilty, Johns was implicated in other drug transactions involving three individuals: Gregory Costa, Stephen Villone, and Kevin Andrews. The facts concerning this trafficking are essentially undisputed, as is the fact that Johns later lied about them to a federal probation officer.

On May 14, 1992, Gregory Costa was arrested after selling seven ounces of cocaine to a federal agent. Costa identified Johns as one of his regular customers, claiming to have sold him seven ounces of cocaine in fourteen separate transactions starting in January 1992. In addition, Costa stated that he had given Johns 23 grams of cocaine earlier that day, for which Johns owed him $1,900. Costa agreed to telephone Johns while the police tape-recorded the conversation. In that conversation, Costa asked Johns to pay the $1,900 Johns owed for the 23 grams of cocaine that Costa had "fronted" to him, and Johns replied, "I only have a couple hundred on me. I was gonna, you know, go out and do some business, but ... now I'm a little wary."

When Johns was arrested on June 25, 1992, he admitted to a federal agent that he had purchased an unknown amount of cocaine from Stephen Villone—a known drug trafficker in the Brattleboro, Vermont area—in transactions dating back to 1984. He also admitted purchasing between one and five ounces of cocaine since 1989 from Kevin Andrews, including the cocaine involved in the December 19, 1991 drug sale to Kellom.

After pleading guilty on September 14, 1992, Johns met with a probation officer who was responsible for preparing the presentencing report. In the course of the interview, Johns denied involvement in any cocaine transactions other than the three charged in the indictment. The report recommended an upward adjustment in sentence for obstruction of justice:

> In sum, the defendant provided materially false information concerning the scope of his drug trafficking activities and the individuals with whom he associated in furtherance of this illegal enterprise. Therefore, an obstruction of justice adjustment is appropriate in this case.

The report also recommended that the court deny a downward adjustment for acceptance of responsibility for essentially the same reason.

At the sentencing hearing, the district court received evidence concerning certain factual issues that are no longer in dispute. Thereafter, the court ruled that Johns. had obstructed justice and, based upon the recommendations in the report, imposed a sentence of 51 months' imprisonment, three years of supervised release, and a special assessment of $50.

Johns filed a timely notice of appeal, and his assigned counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). On November 22, 1993, this Court relieved assigned counsel and appointed the Legal Aid Society, Federal Defender Division, as appellate counsel.

### DISCUSSION

Johns challenges the district court's imposition of a two-level increase in his offense level pursuant to section 3C1.1 of the Guidelines, which states:

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

Obstruction of justice within the meaning of section 3C1.1 includes giving "materially false information to a probation officer in respect to a presentence or other investigation for the court." U.S.S.G. § 3C1.1, Application Note 3(h). "Materially false information" is any "information that, if believed, would tend to influence or affect the issue under determination." *Id.*, Application Note 5. In the realm of sentencing, "[t]he definition of a 'material' statement embraces all false statements that would tend to affect a defendant's sentence, whether or not discovery of the falsity of the statement is inevit-

able." *United States v. Rodriguez,* 943 F.2d 215, 218 (2d Cir.1991).

The government argues that Johns's role in transactions not listed in the indictment was clearly material to a determination of his sentence, either because such transactions were part of the "instant offense" or because the transactions constituted relevant conduct. Therefore, Johns's denial of involvement in these transactions, if believed, would have tended to affect his sentence. Because that is so, the government argues, the court had authority to impose the two-point increase in defendant's offense level for obstruction of justice.

Johns does not deny that he lied about matters relevant to a determination of his base offense level, although he argues, citing *United States v. Howard,* 923 F.2d 1500 (11th Cir.1991), that his statements were not "material falsehoods," because the probation officer had the correct information, or had access to it. Under the law of this Circuit, however, we look to the *defendant's* representations in deciding the issue of materiality. If those representations could affect the sentence (if believed), then it is irrelevant that the government has possession of other information that rebuts the defendant's representations. *See Rodriguez,* 943 F.2d at 218.

■ Johns's main line of argument is that his statements, even if material, fell within the following exception to section 3C1.1 created by Application Note 1:

> This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or statements by the defendant, such testimony or statements should be evaluated in a light most favorable to the defendant.

By virtue of this language, an unsworn denial of guilt—even a false and material unsworn denial—cannot become the predicate for an obstruction of justice adjustment.

■ The government argues that Application Note 1 should be confined to essentially Fifth Amendment circumstances, such as where an individual chooses to remain silent or (when not testifying under oath) utters a "simple" denial of guilt. The government contends that the language of Note 1 should not extend to any falsehood more elaborate than that. However, nothing in the language of Note 1 indicates that the Committee intended to confine its application strictly to the territory covered by the Fifth Amendment. And we have recently ruled that the Sentencing Guidelines may provide broader protection to a defendant than the Constitution. *See United States v. Austin,* 17 F.3d 27, 31 (2d Cir.1994) (construing wording of Application Note 1(a) to U.S.S.G. § 3E1.1 more broadly than the Fifth Amendment).

■ We now turn to the statements in issue, keeping in mind the Guidelines' direction that we should evaluate a defendant's statements "in a light most favorable to the defendant." U.S.S.G. § 3C1.1, Application Note 1. The question of whether the statements constitute an obstruction of justice under the Guidelines "is a matter of legal interpretation, and is subject to our *de novo* review." *United States v. Perdomo,* 927 F.2d 111, 118 (2d Cir.1991).

At the sentencing hearing the district court asked the probation officer several questions regarding his interview with the defendant. We set out in full that portion of the transcript:

> THE COURT: I'd just ask, for the record, Mr. McNamara, did you, during the presentence interview, inquire of Mr. Johns as to any prior transactions relative to cocaine other than what was indicated in the indictment?
>
> MR. McNAMARA: Yes, I did.
>
> THE COURT: And what did you ask?
>
> MR. McNAMARA: I asked, "Were you involved in any other cocaine transactions other than the ones we've discussed?"
>
> The ones we discussed were the three incidents specified in the indictment. And he responded, "No."

THE COURT: Thank you. Did he ever mention to you the alleged transactions with one Mr. Costa?

MR. McNAMARA: No.

THE COURT: Very well.

MR. McNAMARA: Other than he did admit to a transaction that occurred on March 5, 1991, and that cocaine did come from Costa. So it was no denial that—no affirmative denial he got that cocaine from Costa. He just didn't discuss it.

THE COURT: Did he say anything to you or respond to you in any way relative to the Villone contact or the Andrews contact?

MR. McNAMARA: Yes. Attorney Bothfeld produced the Vermont State Police report and pointed out the section where Mr. Johns had said—made comments regarding his involvement with Villone. He said that he did know Villone, due to his prior relationship with Villone's current wife, but that he had never purchased cocaine from Villone.

THE COURT: And what about the Andrews situation?

MR. McNAMARA: The Andrews—with regard to that he said he knew Andrews. He was an acquaintance of Andrews', not a friend of Andrews'; and that the statement in the police report was wrong, that he never said that; that he knew of Andrews moving the amount of cocaine that's attributable to him in that statement, but that cocaine was never sold to him.

THE COURT: Thank you.

This testimony concerns four false statements or omissions by Johns. The first is his answer "No" to the general question regarding his involvement in transactions other than those listed in the indictment; the second is his silence regarding transactions with Costa; the third is his denial that he ever purchased cocaine from Villone; and the fourth is his denial of having purchased cocaine from Andrews.

The first statement is a pure denial of guilt. It is squarely within the language of Note 1, which states that "[a] defendant's denial of guilt ... is not a basis for application of this provision," and we do not understand the government to argue otherwise. Johns's silence regarding his involvement with Costas is also squarely within the protection of Note 1, which covers a "refusal to admit guilt or provide information to a probation officer."

The last two statements, however, are not such clear instances. According to the probation officer, the defendant stated "that he had never purchased cocaine from Villone"; and that "cocaine was never sold to him" by Andrews. The government contends that these are not simply denials of guilt, but affirmative statements of materially false information. We conclude, however, that they do constitute "denials of guilt" and therefore may not be deemed obstruction of justice for the purpose of sentence enhancement. There is no principled basis for distinguishing between laconic noes and the same lies expressed in full sentences. It is indisputable that Note 1 limits retribution for denials of guilt that are false; therefore, there can be no moral dimension to the matter of how that false denial may be framed. Moreover, the wording of the denial will often be affected by the form of the question. Within the context of § 3C1.1, *every* denial of guilt will be materially false. Note 1 removes this sort of false statement from the ambit of the Guidelines provision. *See, e.g., United States v. Surasky,* 976 F.2d 242 (5th Cir.1992); *United States v. Thompson,* 944 F.2d 1331 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1177, 117 L.Ed.2d 422 (1992); *United States v. Urbanek,* 930 F.2d 1512 (10th Cir.1991).

We stress that the scope of this protection is relatively narrow. As the Fifth Circuit noted in *Surasky,* "not every attempt at self-exoneration by a defendant is privileged from enhancement by U.S.S.G. § 3C1.1. For example, if someone in [defendant's] shoes were to say 'John Smith did it, not me,' when in fact John Smith was not involved, such a statement, we think, would be more than a simple denial of guilt and could be treated as an obstruction of justice...." 976 F.2d at 245 n. 2. That is not, however, a consideration raised by the false statements in this case. Nor is this a case in which a defendant denies past convictions,

which we have held *does* give rise to an obstruction of justice adjustment. *Rodriguez*, 943 F.2d at 218. Application Note 1's concern is with protecting a defendant from exposing himself to *additional* criminal charges. *See Surasky*, 976 F.2d at 245 n. 3.

 In order to find that Johns's statements constituted an obstruction of justice, we also would have to find "that the defendant consciously act[ed] with the *purpose* of obstructing justice." *United States v. Stroud*, 893 F.2d 504, 507 (2d Cir.1990). All of Johns's false statements are susceptible to such a construction; but it is equally plausible that each statement was an attempt by the defendant to avoid implicating himself in uncharged crimes. Evaluating these statements "in a light most favorable to the defendant," we view each one as a choice to "simply exercise [one's] constitutional right to refrain from incriminating [oneself] to authorities by denying wrongdoing." *Thompson*, 944 F.2d at 1348. Whether or not he was actually exposed to possible prosecution for these offenses cannot be determinative, since one cannot require a criminal defendant in this situation to navigate Fifth Amendment jurisprudence and the Sentencing Guidelines at the same time. The language of Note 1 is clear—absent perjury, a defendant may not suffer an increase in his sentence solely for refusing to implicate himself in illegal activity, irrespective of whether that refusal takes the form of silence or some affirmative statement denying his guilt.

 There are of course other potential consequences of uttering false denials to the probation officer. In this case, the sentencing judge refused to grant a downward adjustment for acceptance of responsibility under section 3E1.1 of the Guidelines, because he had found the defendant to have engaged in an obstruction of justice. *See* U.S.S.G. § 3E1.1, Application Note 4 ("Conduct resulting in an enhancement under § 3C1.1 ... ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct."). While we are vacating the sentence with respect to the finding of an obstruction of justice, the issue of acceptance of responsibility will need to be revisited by the district court. If on remand the court finds

that the conduct falsely denied by the defendant comprised the offense of conviction, then the court may properly refuse to grant a downward adjustment for acceptance of responsibility. *Austin*, 17 F.3d at 31 (2d Cir.1994) (citing *United States v. Reyes*, 9 F.3d 275, 279 (2d Cir.1993)).

## CONCLUSION

The defendant's statements constitute denials of guilt and thus fall within the exception to section 3C1.1 created by Application Note 1 to that section. We therefore vacate the sentence and remand to the district court for resentencing consistent with this opinion.

ALTIMARI, Circuit Judge, dissenting:

Because I believe that Johns was not exercising his constitutional rights when he provided materially false information to his probation officer, I would vote to affirm the enhancement of his sentence for obstruction of justice. Accordingly, I respectfully dissent from the majority opinion.

This Court has never articulated the precise scope of the term "denial of guilt" under the obstruction of justice guideline. There can be no dispute that a defendant has the absolute constitutional right to remain silent and to plead not guilty, thereby forcing the government to prove every aspect of its case. The majority, however, interprets Application Note 1 as providing defendants greater protection than the Fifth Amendment does. I disagree. I believe that a defendant who lies to a probation officer or another officer of the court about matters material to the issue under determination is obstructing justice, even if his misstatements are phrased as denials of wrongdoing. *See United States v. Lange*, 918 F.2d 707, 709 (8th Cir.1990) ("We read the phrase 'denial of guilt' to refer to a defendant's constitutional right to put the government to its proof by pleading not guilty to the offense charged.").

Application Note 1 was not intended to confer on defendants any rights greater than those granted to them by the Fifth Amendment. As the first sentence of the note indicates, the note simply clarifies the obvious rule that a defendant's sentence cannot

be enhanced when he exercises his constitutional rights.

In Johns's case, none of his affirmative statements constituted the exercise of his constitutional rights. Johns answered "No" to the general question regarding uncharged drug transactions, denied involvement with Villone and Andrews, and denied making prior admissions to the police. These statements are not denials of guilt in the constitutional sense. Whether there is a principled basis for distinguishing between "laconic noes and the same lies expressed in full sentences" is not the issue. Even a laconic no constitutes an obstruction of justice because it does not reflect the exercise of a constitutional right.

Johns's conduct epitomizes obstruction of justice. Instead of refraining from incriminating himself or remaining silent, as he is entitled to do under the Fifth Amendment, Johns chose to lie. To say, as the majority does, that Johns was simply exercising his Fifth Amendment rights essentially affords defendants a constitutional right to deceive officers of the court. There is no constitutional right to lie. I would affirm the enhancement of Johns's sentence for obstruction of justice.