**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                           No. 96-4666

PURVIS H. GORMLEY,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Charles H. Haden II, Chief District Judge, sitting by designation.
(CR-96-12-V)

Argued: December 3, 1999

Decided: January 7, 2000

Before WILKINSON, Chief Judge, KING, Circuit Judge,
and BUTZNER, Senior Circuit Judge.

_____

Vacated and remanded by published opinion. Senior Judge Butzner
wrote the opinion, in which Chief Judge Wilkinson and Judge King
joined.

_____

**COUNSEL**

**ARGUED:** George Alan DuBois, Assistant Federal Public Defender,
Raleigh, North Carolina, for Appellant. Brian Lee Whisler, Assistant
United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:**
William Arthur Webb, Federal Public Defender, Raleigh, North Caro-

lina, for Appellant. Mark T. Calloway, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

_____

**OPINION**

BUTZNER, Senior Circuit Judge:

Purvis H. Gormley was indicted on one count of conspiracy to defraud the United States in violation of 18 U.S.C.A. § 286 (West Supp. 1999) and nineteen counts of filing fraudulent claims in violation of 18 U.S.C.A. § 287 (West Supp. 1999). After a jury trial, Gormley was convicted of the conspiracy charge and 16 counts of making fraudulent claims. On August 12, 1996, the trial court sentenced Gormley to concurrent terms of 51 months imprisonment for each count. Gormley appeals his sentence only, complaining about enhancements the district court imposed. We affirm the enhancement based on obstruction of justice, U.S.S.G. § 3C1.1 (1995). We reverse the enhancement based on a special skill, U.S.S.G.§ 3B1.3.

I

In the early 1990s, Gormley owned a strip mall and convenience store, and he operated a tax preparation business out of the store. Gormley is not an accountant and has no special training in the area of tax preparation. In 1993, Gormley began soliciting customers for MDP Quick Tax (MDP), a business that filed electronic tax returns with the Internal Revenue Service (IRS). MDP was owned by Michael Pahutski, a tax preparer and bookkeeper.

MDP Quick Tax was in the "rapid refund" business. In order to obtain a rapid refund, a taxpayer brought his or her tax information to an agent of MDP. Pahutski then prepared a return based on this information and filed the return electronically with the IRS. Through an arrangement with a bank, the taxpayer was then issued a check in the amount of the anticipated refund less fees charged by MDP and the bank. In return, the taxpayer assigned to MDP the actual refund check from the IRS. In order to establish the business, Pahutski

2

obtained special authorization from the IRS to file returns electronically.

Gormley solicited customers for MDP and interviewed them to obtain the necessary information to file a return. He then forwarded a completed information sheet, the taxpayer's W-2 forms, and other supporting documentation to Pahutski, who used the materials to prepare the return for electronic filing. MDP paid Gormley a commission for every client he brought in, and he was one of several people in the community soliciting business for MDP.

An IRS investigation revealed that a number of the returns electronically filed by MDP contained claims for nonexistent or non-qualifying dependents, falsified wage and income information, and fraudulent tax credit claims. The effect of these false claims was to increase the amount of the refund beyond that which the taxpayer was actually owed. The evidence presented at trial indicated that Gormley provided the false information used in some of the returns and conspired to do so with Pahutski and other agents of MDP and that they kept the fraudulently produced portion of the refunds for themselves.

Pahutski and two other individuals who solicited business for MDP pled guilty and testified for the government at Gormley's trial. A number of taxpayers that Gormley had recruited for MDP also testified for the government. Gormley did not testify at trial and did not call any witnesses on his behalf.

After the trial and before sentencing, the probation officer charged with preparing the presentence report (PSR) interviewed Gormley. In the PSR, the probation officer summarized a statement Gormley made during the interview:

> During the interview with the United States Probation Officer, conducted on 6/17/96, the defendant reported that he was unaware that any of the information that he had obtained and subsequently recorded on individual tax returns was false. Mr. Gormley states that he would prepare the information sheets for the taxpayers, recording the information given to him by the individuals filing the returns. He denies listing false dependents, claiming false child care

3

exemptions, or altering filing status, on behalf of clients of MDP Quick tax, in order to obtain higher, fraudulent tax refunds from the IRS. Mr. Gormley further reports that the individual taxpayers were knowledgeable of tax procedures, and fully aware that the above-mentioned practices would result in their receiving larger refunds. He states that he only recorded the information provided to him, and did not question the validity of the data that he obtained. Based on his belief that the information being provided to him by the taxpayers was genuine, his only role being preparation of the tax returns, Mr. Gormley states that he did not view himself as being culpable in criminal activities.

J.A. 294-95.

## II

Gormley challenges two upward adjustments to the offense level the trial court imposed at sentencing. He first contends that his statements to the probation officer did not warrant a two-level obstruction of justice enhancement under U.S.S.G. § 3C1.1. He also contends that he did not possess a special skill warranting a two-level enhancement under U.S.S.G. § 3B1.3.

Appellate courts are required to give due deference to the district courts' application of the sentencing guidelines. 18 U.S.C.A. § 3742(e) (West Supp. 1999). "If the issue turns primarily on a factual determination, an appellate court should apply the`clearly erroneous' standard." United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989) (citation omitted). "If the issue . . . turns primarily on the legal interpretation of a guideline term, . . . the standard moves closer to de novo review." Id.

## III

The Sentencing Guidelines provide: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." U.S.S.G.

4

§ 3C1.1. The commentary to that section instructs that a "defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury) [or] refusal to admit guilt or provide information to a probation officer . . . is not a basis for application of this provision." U.S.S.G. § 3C1.1 appl. note 1. The Second Circuit has stated that, when applying the denial of guilt exception, "[t]here is no principled basis for distinguishing between laconic noes and the same lies expressed in full sentences." United States v. Johns, 27 F.3d 31, 35 (2nd Cir. 1994).

In this case, even evaluating the statements in the light most favorable to the defendant, see U.S.S.G. § 3C1.1 appl. note 1, Gormley went beyond merely denying his guilt and implicated his taxpayer clients in the scheme to defraud the IRS. Gormley therefore cannot avail himself of the denial of guilt exception. Cf. United States v. Surasky, 976 F.2d 242, 245 n.2 (5th Cir. 1992) (noting that, if a defendant "were to say `John Smith did it, not me,' when in fact John Smith was not involved, such a statement . . . would be more than a simple denial of guilt and could be treated as obstruction of justice").

In order to apply the obstruction of justice enhancement, the district court must find that a defendant "`consciously acted with the purpose of obstructing justice.'" United States v. Romulus, 949 F.2d 713, 717 (4th Cir. 1991). Because the question of willfulness is essentially a finding of fact, the decision of the district court is subject to "clearly erroneous" review. Daughtrey, 874 F.2d at 217.

Gormley contends that he did not act with the intent to deceive, but that he made his statement to the probation officer during a very emotional time, in the hours after the jury returned its verdict convicting him.

The record reflects, however, that Gormley was convicted on May 22, 1996, and he made the statement to the probation officer on June 17, 1996. His explanation is therefore unavailing. The district court found that Gormley's false statements were an attempt to obstruct justice and stated: "I am aware of the falsity of the statements based upon the evidence that I heard at trial . . . ." J.A. 268. Because no other explanation is clear from the record, the conclusion of the district court that Gormley acted willfully was not clearly erroneous.

5

A false statement to a probation officer only gives rise to an obstruction of justice enhancement if it is material. U.S.S.G. § 3C1.1 appl. note 3(h). The Sentencing Guidelines commentary explains: "`Material' evidence, fact, statement, or information, as used in this section, means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 appl. note 5.

Gormley argues that his statement to the probation officer, even if false, was not material because it had no effect on the proceedings.

The threshold for materiality, however, is "conspicuously low." United States v. Dedeker, 961 F.2d 164, 167 (11th Cir. 1992). In Dedeker, the court held that the failure of the defendant to disclose a misdemeanor conviction to a probation officer constituted obstruction of justice, even though the conviction would not be used in the calculation of the defendant's criminal history. Id. at 165-67. Because the defendant's false statement, if believed, could have affected the appropriate sentence within the calculated range, it tended to influence an issue under determination. Id. at 167. Gormley's statement similarly was material because, if believed, it could have affected the sentence ultimately imposed within the guideline range. The district court therefore did not err in applying the obstruction of justice enhancement to Gormley's sentence.

In upholding the enhancement of Gormley's sentence for obstruction of justice, we note a difference with the Eleventh Circuit case of United States v. Gardiner, 955 F.2d 1492 (11th Cir. 1992). In Gardiner, the court held that a presentence explanatory assertion of innocence similar to the one in this case could not be material to sentencing as a matter of law because, in order to believe the assertion, one would have to disregard the jury verdict. Id. at 1499 & n.15. We decline to place this judicial gloss on the requirements for the obstruction of justice enhancement.

IV

The Sentencing Guidelines provide: "If the defendant . . . used a special skill in a manner that significantly facilitated the commission or concealment of the offense, increase [the offense level] by 2

6

levels." U.S.S.G § 3B1.3. The commentary to the guideline explains that "`[s]pecial skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts." U.S.S.G. § 3B1.3 appl. note 2. Because the determination of whether a defendant possessed a special skill that facilitated the commission of the offense is ordinarily factual, the court reviews the findings of the district court to determine if they are clearly erroneous. United States v. Hummer, 916 F.2d 186, 191 (4th Cir. 1990). But if the district court undertakes to interpret the guidelines, "the standard moves closer to de novo review." Daughtrey, 874 F.2d at 217.

In making its ruling on the special skill enhancement, the district court stated:

> [N]ot only did Mr. Gormley engage in some special skills but he also availed himself of the services of others who were co-conspirators to handle the actual preparation of these returns, and the evidence is replete in that, so I do find again as with this that there was a special skill involved.

J.A. 266. One of Gormley's coconspirators, Pahutski, was specially authorized by the IRS to file tax returns and obtain refunds electronically. Because "role in the offense" adjustments, such as the special skill enhancement, are based on a defendant's status, they "may not be based on a coconspirator's actions, but must instead result from an individualized determination of each defendant's culpability." United States v. Moore, 29 F.3d 175, 176 (4th Cir. 1994). To the extent that the district court relied on the special skills of Gormley's coconspirators in adjusting his offense level, it committed clear error. The question, then, is whether Gormley personally used a special skill in the commission or concealment of the offense.

In the original presentence report, the probation officer did not propose an enhancement for a special skill. At the behest of the government, however, the probation officer recommended the enhancement, observing that Gormley had been in the tax preparation business for several years and making the conclusory statement that Gormley's "knowledge of tax matters would qualify as a`special skill' that the

7

general public, by and large does not possess." J.A. 310. The district court adopted the findings of the presentence report but made no further statement regarding Gormley's personal possession of a special skill.

The record reflects that Gormley did not have any formal training in the areas of tax preparation or accounting but that he had operated a tax preparation business as a sideline for several years. While a special skill "usually requir[es] substantial education, training or licensing," U.S.S.G. § 3B1.3 appl. note 2, "substantial training is not a mandatory prerequisite to making a special skills adjustment." Hummer, 916 F.2d at 191. The skill in question must at least be one that is obtained through the substantial equivalent of such training and must not be one that is possessed by members of the general public. See id. (upholding application of the adjustment to "an inventor who had obtained patents for his inventions and had`through life experience obtained the special ability to tamper with consumer products.'").

Gormley only had experience in tax preparation, a skill that millions of Americans exercise every year. His role in the offenses was to gather information from clients and to fabricate dependents, income information, filing status, and tax credit claims. These are not skills that one normally obtains through "substantial training," nor are they on par with the special skills possessed by"pilots, lawyers, doctors, accountants, chemists, and demolition experts." U.S.S.G. § 3B1.3 appl. note 2.

The district court inappropriately considered the skills possessed by Gormley's coconspirators. It also erred in its interpretation of the guidelines by concluding that tax preparation as practiced by Gormley is a special skill. We reverse this aspect of the case. Gormley did not possess a special skill within the meaning of U.S.S.G. § 3B1.3.

V

We vacate Gormley's sentence and remand for resentencing by eliminating the enhancement for the use of a special skill.

VACATED AND REMANDED

8