**UNITED STATES of America, Appellee,**

v.

**Benjamin SISTI and Jonathan N. Googel, Defendants–Appellants.**

**Nos. 1058, 1083, Dockets 95–1419, 95–1421.**

United States Court of Appeals, Second Circuit.

Argued Feb. 16, 1996.

Decided July 22, 1996.

Jacob D. Zeldes, Zeldes, Needle & Cooper, PC, Bridgeport, Connecticut (Shelley R. Sadin, Adele V. Patterson, Zeldes, Needle & Cooper, Bridgeport, Connecticut, of counsel), for Defendant–Appellant Sisti.

James T. Cowdery, Cowdery & Ecker, LLC, Hartford, Connecticut (Peter Goldberger, Alan Ellis, Pamela A. Wilk, Law Offices of Alan Ellis, PC, Ardmore, Pennsylvania; Steven D. Ecker, Christopher Schmeisser, Cowdery & Ecker, LLC, Hartford, Connecticut, of counsel), for Defendant–Appellant Googel.

Peter A. Clark, Assistant United States Attorney, New Haven, Connecticut (Edwin J. Gale, Acting United States Attorney for the District of Connecticut, Thomas J. Murphy, Assistant United States Attorney, New Haven, Connecticut, of counsel), for Appellee.

Before: MAHONEY, WALKER, and CALABRESI, Circuit Judges.

WALKER, Circuit Judge:

Defendants-appellants Benjamin Sisti and Jonathan Googel appeal from sentences imposed in July 1995 by the United States

District Court for the District of Connecticut (T.F. Gilroy Daly, *District Judge* ). The sentence in each case included a two-level enhancement for obstruction of justice and a seven-level upward departure from the applicable Guidelines range. We affirm in part, and vacate and remand in part.

## BACKGROUND

The defendants, Benjamin Sisti and Jonathan Googel, were central players in what by reputation is the largest real estate scandal in Connecticut's history. The collapse of the Colonial Realty Company ("Colonial"), a West Hartford based company founded by Sisti and Googel in 1966, was precipitated by a massive fraudulent scheme masterminded by the defendants and others. Colonial was a national real estate syndication firm consisting of eighty limited partnerships that controlled approximately $2 billion in real estate, located primarily in Connecticut. On September 14, 1990, as a result of the receipt of millions of dollars of false investor notes by numerous banking institutions, six of Colonial's creditor banks forced Colonial, Sisti, and Googel into bankruptcy, which resulted in several thousand investors sustaining substantial losses. The "criminal depravity" of the defendants' actions, as characterized by the district court, was far-reaching and involved the concealment from investors of material information about the company's failing finances; the secret funneling of millions of dollars to out-of-state relatives in an effort to hide cash from creditors; the business-as-usual sale of shares in limited partnerships even after the defendants knew the company was headed for collapse; and the bribery of prominent persons, including the Mayor of Waterbury, Connecticut, to keep up the flow of investments into Colonial projects of funds controlled by these persons. To date, eighteen Colonial-related defendants have been charged with federal crimes. Of these, sixteen have entered guilty pleas and one was convicted after trial. The remaining defendant, Colonial's third principal and Chief Financial Officer Frank Shuch, committed suicide in February 1992 while awaiting trial.

On June 8, 1993, as part of a plea and cooperation agreement, Googel pleaded guilty to an information charging him with two counts of wire fraud, in violation of 18 U.S.C. § 1343; one count of bank fraud, in violation of 18 U.S.C. § 1344; and one count of endeavoring to impede the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a). On the same day, also as part of a plea and cooperation agreement, Sisti pleaded guilty to an information charging him with two counts of bankruptcy fraud, in violation of 18 U.S.C. § 152; one count of wire fraud, in violation of 18 U.S.C. § 1343; and one count of structuring transactions to evade reporting requirements, in violation of 31 U.S.C. §§ 5322(a) and 5324(a)(3).

On July 6, 1995, the district court sentenced Googel to terms of sixty months in prison concurrently on the first three counts (the "fraud" group), and thirty-six months consecutively on the fourth count (the "finder's fees" group), for a total effective sentence of ninety-six months to be followed by three years of supervised release with a special requirement that the defendant timely file all tax returns. On July 7, 1995, the district court sentenced Sisti to prison terms of sixty months concurrently on the first three counts (the "fraud" group), and forty-eight months consecutively on the fourth count (the "tax" group), for a total effective sentence of 108 months to be followed by three years of supervised release with a special requirement that the defendant file all tax returns. The defendants are presently serving their sentences.

The sentence of each defendant included a seven-level departure upward from his applicable Guidelines range. The sentencing court stated that the departures were supported on several grounds and that each of these grounds "individually" supported the seven-level upward departure. The district court principally relied on 1) the defendants' participation in the bribery of then-Waterbury Mayor Joseph Santopietro and his Corporation Counsel, Francis Donnarumma, to secure the investment of municipal employee pension funds into Colonial projects and 2) the defendants' actions in withholding a disclosure document from investors, which led to the investment of more than $20 million in

their last limited partnership at a time when the defendants knew Colonial was headed for bankruptcy.

The conduct to which Sisti and Googel pleaded guilty arose from their roles as principals of Colonial, although, as reflected by their offenses of conviction, their roles differed. Sisti's bankruptcy violations consisted of the fraudulent transfer and concealment of funds. As early as March 1990, Sisti was aware of his own and Colonial's financial instability. Despite this knowledge, Sisti transferred assets through various Sisti family members to keep those assets out of the bankruptcy estate. Specifically, at a time when he knew that an involuntary bankruptcy petition was likely to be filed against him, Sisti transferred $1 million from one of his accounts at a now-defunct Connecticut bank into a certificate of deposit in his wife's name at a Florida bank. In addition, he fraudulently transferred a $3.7 million certificate of deposit from the same failed bank to a certificate of deposit in his wife's name at the same Florida bank. Sisti's wire fraud violation resulted from the misappropriation of a $4 million home equity loan. Prior to the closing of the loan, which he represented would be used for the purchase of a magazine, Sisti knew that the proceeds of the loan would actually be used to purchase residential and commercial property in Florida in his wife's name. Finally, Sisti's internal revenue laws violation was based on the fact that he directed a Colonial employee to obtain $36,-000 in cash by cashing four Colonial checks. To obviate the necessity of filing currency transaction reports, each of the checks was made out to cash in the amount of $9,000. By similar methods on more than forty other occasions, Sisti generated over $1 million in cash.

Googel's misconduct arose out of Colonial's sales operations. As the head of Colonial's sales force, Googel solicited several "straw" purchasers to invest in two Colonial limited partnerships. Although these purchasers executed promissory notes, Googel gave them secret assurances that they would not be held liable on the notes. Googel then pledged the promissory notes to two financial institutions as collateral for investor note loans in the amount of $2,277,000 to the two Colonial limited partnerships. In addition, Googel participated in paying "finder's fees" to persons who identified potential investors. These fees were paid in cash out of the sales commissions to frustrate revenue collection by the Internal Revenue Service ("IRS"). Although not reflected in the counts of his conviction, Googel was also involved in the payment of a $50,000 bribe to Waterbury's Mayor and Corporation Counsel to facilitate the investment of municipal pension funds in Colonial. During the official investigation of the payment, Googel called James Cahill, a former Colonial employee, to discuss what the latter would tell the investigators concerning these payments.

At the outset of the investigation, Sisti and Googel actively sought to mislead and obstruct the federal investigators who were looking into their misconduct. Their plea agreements, however, required them to cooperate with the government in its criminal investigation of Colonial and, after they pleaded guilty, they cooperated fully with the government. Their cooperation resulted in the conviction of Dominick Lopreato, the leader of the Connecticut Laborers' Union, for accepting cash bribes in exchange for his efforts to place union pension funds in Colonial investments.

On appeal, Sisti challenges virtually every aspect of his sentence, arguing that the district court 1) violated his right to due process and Rule 32 of the Federal Rules of Civil Procedure by imposing sentence without fair notice of the grounds upon which it was to be imposed, 2) assumed a "prosecutorial stance," 3) erred in imposing a seven-level upward departure, 4) erred in making enhancements, and 5) erred in finding two groups of criminal conduct instead of one group. In a more limited appeal, Googel argues that the district court 1) provided inadequate notice with respect to the adjustment for obstruction of justice and 2) erred in enhancing his sentence for obstruction of justice.[1] The adequacy of the notice to both

---

1. Googel raised numerous additional claims of error in his brief on appeal. However, in a letter

dated February 8, 1996, Googel notified the court of his intention to limit his appeal to the

defendants of various departures and enhancements, the two-level enhancement for Googel's obstruction of justice, and the seven-level upward departure of Sisti's offense level are the subject of this opinion; Sisti's remaining arguments are treated in a separately filed summary order.

## DISCUSSION

 We review de novo the district court's application of the Guidelines. *United States v. Reese*, 33 F.3d 166, 174 (2d Cir. 1994) (quoting *United States v. Stanley*, 12 F.3d 17, 20 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1572, 128 L.Ed.2d 216 (1994)), *cert. denied*, —— U.S. ——, 115 S.Ct. 756, 130 L.Ed.2d 655 (1995). We review the district court's factual findings for clear error. *Id.*

### A. Notice

Both defendants argue that the district court failed to provide notice of departures and sentence enhancements sufficient to satisfy Fed.R.Crim.P. 32. Sisti broadly argues that, with one exception, the sentencing court did not give a clear advance indication of the factual basis for the increase in his sentence and that his right to due process was thereby violated. Googel claims that notice was inadequate only with respect to the sentencing court's two-level enhancement for obstruction of justice.

The notice requirement of Rule 32 directs that, before imposing sentence, a sentencing court must 1) verify that the defendant and his counsel read and discussed the presentence report ("PSR"), 2) afford the defense counsel an opportunity to speak on behalf of the defendant, and 3) address the defendant personally and ask whether he wishes to make a statement and to present any mitigating information. Fed.R.Crim.P. 32(c)(3)(A)–(C). In *Burns v. United States*, 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), the Supreme Court interpreted Rule 32 as requiring notice to a defendant of a possible upward departure at sentencing. Specifically, the Court held that "before a

district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling." *Id.* at 138, 111 S.Ct. at 2187.

 A defendant must have "an opportunity to assure the accurate presentation of reliable sentencing information to the district court." *United States v. Romano*, 825 F.2d 725, 728 (2d Cir.1987). To that end, Rule 32 provides for "focused, adversarial resolution of the legal and factual issues relevant to fixing Guidelines sentences," *Burns*, 501 U.S. at 137, 111 S.Ct. at 2186–87, to ensure that a defendant is not sentenced "on the basis of 'materially untrue' statements or 'misinformation,'" *Romano*, 825 F.2d at 728 (quoting *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)). A defendant is provided this opportunity, and the notice requirement is therefore satisfied, as long as a defendant is adequately warned by the PSR, by the prosecution's submissions, or by the court sua sponte. *See United States v. Contractor*, 926 F.2d 128, 131–32 (2d Cir.), *cert. denied*, 502 U.S. 838, 112 S.Ct. 123, 116 L.Ed.2d 91 (1991).

In the present case, the record reveals that each defendant received notice of the departures and adjustments from various sources. In Googel's case, the initial draft of the PSR noted two possible grounds for upward departure: 1) the Guidelines could not adequately have considered the impact that the defendant's and Colonial's criminal activity had on the state of Connecticut and 2) the actual tax loss contemplated by Count Four (attempt to interfere with administration of internal revenue laws), although significant, could not be determined and therefore the Guidelines do not adequately reflect the seriousness of the offense. In Sisti's case, the PSR noted only that the Guidelines could not have adequately considered as a basis for

claim that the district court erred in enhancing his sentence for obstruction of justice, together with his claim that the district court provided

inadequate notice with respect to that adjustment.

departure the impact of the defendants' criminality on the state of Connecticut.

Between June 14 and June 30, 1995, the district court issued three notices to each defendant that it was contemplating departing upward. In each instance, the parties were given the opportunity to file briefs. The first notice, issued on June 14, 1995, reiterated the grounds for upward departure identified in the initial drafts of the PSRs. The government's response to the first notice included a possible additional ground for an upward departure in Googel's case: On April 1990, when Colonial was suffering from a cash shortage, Googel was among those who permitted the withholding of a disclosure letter of the investment's dimming prospects, which was supposed to have been sent to all potential investors in one of Colonial's limited partnerships. Because of the failure to disclose, the defendants were able to continue recruiting investors, and the limited partnership thereafter received an additional $24 million in equity investments. The government argued that Googel's efforts to keep the offering going to generate cash for the partnership without disclosing any of its financial problems were related to the fraud counts.

On June 28, 1995, in the second notice to each defendant, the district court stated that it was considering an upward departure of "at least seven levels" based on the adverse impact the defendants' and Colonial's criminal activities had on the state and on various persons and institutions. Both notices stated that the court was considering a two-level upward departure for obstruction of justice. In Sisti's case, the contemplated departure resulted from Sisti's admission during the trial of Dominick Lopreato that Sisti testified falsely under oath before the Securities and Exchange Commission. As to Googel, the proposed departure was "based on the defendant's telephone call to James Cahill, his orchestration of witnesses, and his production of false documents and/or records to law enforcement authorities."

The third notices, dated June 30, 1995, stated that the sentencing court was considering an enhancement in both cases for obstruction of justice, as identified in the second notices.

*1. Googel*

Googel presses only his claim that the district court incorrectly imposed, sua sponte, a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 without providing sufficient notice. Although Googel's PSR stated that "[t]he probation officer has no information to suggest that the defendant impeded or obstructed justice," the district court's second notice spelled out that it was considering a two-level upward departure for obstruction of justice "based on the defendant's telephone call to James Cahill, his orchestration of witnesses, and his production of false documents and/or records to law enforcement authorities." Moreover, the third notice to Googel stated that the sentencing court was considering an enhancement for the obstruction of justice.

Googel's contention that the notice to him was inadequate is unavailing. First, although Googel contended and the government conceded that an enhancement for obstruction of justice requires the same notice that *Burns* requires for departures, we have only required such notice for enhancements, as distinguished from departures, upon particular facts. *See United States v. Zapatka*, 44 F.3d 112, 115–16 (2d Cir.1994) (extending Rule 32's notice requirement to apply where adjustment was not recommended by PSR, factual dispute existed as to defendant's conduct, and it was unclear which guideline warranted the adjustment). In any event, we need not inquire further because we find that even if the *Burns* rule were to apply to the obstruction of justice enhancement in this case, the requirement was satisfied.

■ Although Googel maintains that the notice is inadequate unless it contains the specific factual grounds and legal theories for the adjustment, the *Burns* Court held only that the "notice must specifically identify the ground on which the district court is contemplating an upward departure." 501 U.S. at 138–39, 111 S.Ct. at 2187–88. This standard was met. The district court's second and third notices adequately provide Googel with notice of its intention to depart or make an upward adjustment, informing him of the

facts upon which it would rely, and stating the legal basis (obstruction of justice) for such a departure.

### 2. *Sisti*

Sisti contends both that he was given insufficient notice under Rule 32 and that his due process rights were violated. In particular, Sisti highlights the fact that, at sentencing, the district court cited *United States v. Tracy*, 12 F.3d 1186 (2d Cir.1993), and stated:

> I am entitled to rely on information known to me, including the specific information from the matters I just mentioned [the Lopreato, Santopietro, and Duncan trials], in which you, Mr. Sisti, were not a defendant and no additional hearing is necessary.

In *Tracy*, we upheld the district court's denial of a two-level reduction in the defendant's offense level for playing a minor role in the conspiracy in light of the court's familiarity with the defendant's involvement both from the proceedings involving the defendant and from evidence presented at a related trial. 12 F.3d at 1203; *see also United States v. Carmona*, 873 F.2d 569, 574 (2d Cir.1989) (sentencing court entitled to rely on any type of information known to it, including testimony from trial in which person to be sentenced was not a defendant).

▋ "The sentencing court's discretion is 'largely unlimited either as to the kind of information [it] may consider, or the source from which it may come.'" *Carmona*, 873 F.2d at 574 (quoting *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972)). In fact, information from other proceedings may be relied upon at sentencing "so long as the defendant ha[s] an opportunity to respond in order that the court not rely on misinformation." *United States v. Concepcion*, 983 F.2d 369, 387–88 (2d Cir.1992), *cert. denied*, 510 U.S. 856, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993). "[A] sentencing court is free to consider hearsay evidence, evidence of uncharged crimes, dropped counts of an indictment and criminal activity resulting in acquittal" in determining sentence. *Reese*, 33 F.3d at 174; *Concepcion*, 983 F.2d at 387 (sentencing court enti-

tled to rely on any information known to it). The manner in which contested matters at sentencing are resolved is generally left to the discretion of the district court. *Reese*, 33 F.3d at 174; *United States v. Prescott*, 920 F.2d 139, 144 (2d Cir.1990).

In this case, although Sisti maintains that he was not provided with a clear indication of the factual grounds for his sentence, he was reasonably on notice of the basic facts and transactions that supported the resultant enhancements and departures. The sentencing court was entitled to rely on the information generally known to it, and, in any event, we believe that the procedures used were adequate to protect against the risk of an erroneous result. Sisti had an opportunity to dispute the evidence in the PSR, the district court's three notices, and the government's responses that affected his sentence. *See Prescott*, 920 F.2d at 143 (sentencing court must assure itself that information upon which it relies in determining sentence is reliable and accurate).

Sisti also argues that the district court, for the first time at sentencing, gave oral notice that it was contemplating a two-level enhancement on the structuring count pursuant to U.S.S.G. § 2S1.3 for knowing the funds were to promote unlawful activity. Sisti now contends that although the district court stated that the enhancement would be based on "facts set forth in the PSR," the PSR does not support this conclusion. In addition, he assigns error to the district court's factual finding that he knew that the funds would be used to facilitate the commission of another offense.

Under U.S.S.G. § 6A1.3(a), "[w]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." *See Burns*, 501 U.S. at 133, 111 S.Ct. at 2184–85. Because the record does not reasonably admit of any colorable claim that the funds generated from structured transactions were not used to pay bribes, no violation of § 6A1.3(a) occurred. Moreover, Sisti was cognizant of the possibility of such an enhancement as evidenced by his preliminary sentencing memorandum of June 23,

1995, in which he argued that "[e]ven if the structured funds were used improperly, . . . [o]nly if subsequent use of structured funds were outside the heartland would an increased sentence be available."

 In sum, we conclude that each defendant's claims of insufficient notice as to the departures and enhancements imposed at the time of sentence are without merit. The defendants also challenge the departures and enhancements themselves to which we now turn.

### B. *Enhancements and Departures*

#### 1. *Googel*

Googel's principal argument on appeal is that the district court's reasons for imposing the obstruction enhancement were insufficient. He contends that the sentencing court erred in finding a willful attempt to obstruct justice and that, in any event, there is no evidence that the conduct at issue obstructed the prosecution of the conviction offenses as required under U.S.S.G. § 3C1.1. We disagree.

The obstruction of justice enhancement was based on Googel's involvement with the generation of cash, which permitted former Colonial salesman and cooperating Government witness James Cahill to bribe the Mayor of Waterbury and its Corporation Counsel. Specifically, the district court focused its attention on a December 1990 telephone call made by Googel to Cahill, finding that Googel's "efforts [in communicating with Cahill] to focus the investigation on the actual physical passing of the cash . . . constituted an effort by [him] to obstruct the investigation of payoffs by Colonial Realty" and that in "attempt[ing] to set up a meeting with Cahill. . . . [Googel] acted with a specific intent to obstruct justice and that [he] consciously acted with the purpose of obstructing justice." The district court based this adjustment on Googel's telephone conversation with Cahill and made the following findings of fact:

In December 1990, James Cahill received a telephone call from you during which conversation you indicated that you wished to get together with Mr. Cahill to confirm that you never gave Cahill any cash. I also find that on or about December 20, 1990, in a telephone call to Mr. Cahill initiated by Ken Zak [ ], a Colonial salesman, you requested a meeting with Mr. Cahill. Cahill initially agreed and suggested that he would meet you here in Waterbury. You told Cahill that you did not believe that meeting in Waterbury would be a good idea and so you and Cahill agreed on a location named the Long Wharf in New Haven. After speaking with you, Cahill called his attorney, who counseled against this meeting. Cahill immediately called you back and told you that based on his attorney's advice, he could not meet with you. You, sir, apparently switched phones, and I find by a preponderance of the evidence that you did, and stated to Cahill that you wanted to ask one thing, that being confirmation that you had never given Cahill any cash. Cahill at that point asked you what you were talking about and you repeated the question.

 Section 3C1.1 provides for a two-level enhancement "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing" of a given offense. Under this section, a defendant's statement must be evaluated in the light most favorable to the defendant and can be used to enhance his sentence only if the statement unambiguously demonstrates an obstructive intent. U.S.S.G. § 3C1.1, application note 1; *see United States v. Johns,* 27 F.3d 31, 34–35 (2d Cir.1994). In considering whether a defendant acted with obstructive intent, a district court may properly draw all reasonable inferences both from the words used and from the relevant circumstances. *United States v. Shoulberg,* 895 F.2d 882, 885 (2d Cir.1990). Circumstantial evidence is a sufficient basis on which the district court may impose an obstruction of justice enhancement under § 3C1.1. *See United States v. Onumonu,* 999 F.2d 43, 47 (2d Cir.1993).

 We review for clear error the determination as to what the defendant "meant by his words, and how a listener

would reasonably interpret those words." *Shoulberg*, 895 F.2d at 884. Whether the facts on which the sentencing court relied constitute "obstruction of justice" under § 3C1.1 is a question of law subject to de novo review. *Johns*, 27 F.3d at 34; *Onumonu*, 999 F.2d at 45. Because we find that the district court's inference that Googel willfully attempted to obstruct justice is a reasonable one, supported by the evidence in context, we do not disturb it on appeal. However, that does not end the inquiry, because to trigger the application of the obstruction enhancement pursuant to U.S.S.G. § 3C1.1 the obstruction must be tied to a count of conviction. *United States v. Perdomo*, 927 F.2d 111, 118 (2d Cir.1991).

Googel contends that the district court erred in enhancing his sentence for obstruction of justice because the conduct relied upon did not affect the investigation of the offenses of conviction. Googel argues that the obstruction of justice enhancement may not be tied to the straw investor fraud counts (Counts One through Three) both because those counts are unrelated either to Cahill or to the Waterbury payoffs and because the government's investigation of the straw investor scheme had not even begun at the time of the Googel–Cahill telephone conversation in December 1990.

■ The government in fact has conceded that the Waterbury payoffs arose in the context of various Colonial limited partnerships separate from those involved in the fraud counts and that the government's investigation of this conduct began after the Googel–Cahill telephone conversation. For this reason, we agree with Googel that Googel's conduct in paying off the Mayor of Waterbury could not have obstructed the investigation of the fraud counts, and we therefore reverse the two-level enhancement for obstruction of justice with respect to Counts One through Three.

■ The government argues, however, that Googel's fourth count of conviction is not time limited because it charges him with an ongoing pattern of conduct that impeded the functions of the IRS through September 1990, the time of the bankruptcy. Moreover, in addressing an upward departure, the dis-

trict court expressly found that the payment made to Mayor Santopietro and Corporation Counsel Donnarumma in connection with the City of Waterbury's investment of pension funds in Colonial was "related to count four, the tax count, ... because the payoff to Santopietro and Donnarumma, like count four, involved the payment in cash of finders fees." Additionally, in its response to the second notice, the government stated: "Mr. Googel's fourth count of conviction involves his participation in a process whereby the IRS was impeded in the collection of tax revenues through the payment of cash finders' fees. The money used to pay the former Mayor was paid through this same process." Therefore it is plain to us that Googel's call to Cahill, designed to turn investigators' attention away from Googel and toward the physical transfer of cash, supports the enhancement for obstruction of justice.

### 2. *Sisti*

Sisti challenges nearly every aspect of his sentence. He argues that the sentencing court erred in 1) imposing a seven-level upward departure, 2) imposing enhancements, and 3) finding two groups of criminal conduct instead of only one.

In upwardly departing seven levels, the sentencing court cited a number of reasons, stating that each ground was "individually" sufficient. Sisti argues that none of the grounds cited by the court justifies the upward departure.

■ Sisti contends generally that the conduct relied upon by the district court to support the departure is not sufficiently related to his offenses of conviction. An upward departure under U.S.S.G. § 5K2.0 is permitted for misconduct not leading to conviction if the defendant committed acts " 'relate[d] in some way to the offense of conviction, even though not technically covered by the definition of relevant conduct.' " *United States v. Uccio*, 917 F.2d 80, 86 (2d Cir.1990) (quoting *United States v. Kim*, 896 F.2d 678, 684 (2d Cir.1990) (alteration in *Uccio* )). In departing under § 5K2.0, the sentencing court must support the departure with findings of fact and explain how it determined

the departure's magnitude. *United States v. Tropiano,* 50 F.3d 157, 164 (2d Cir.1995).

The first ground cited by the district court was Sisti's Waterbury bribe conduct. Specifically, the sentencing court found that Sisti's involvement with the cash payoffs made to Donnarumma and Santopietro to facilitate the City of Waterbury's pension fund investments in Colonial was related to Sisti's fourth count of conviction, which charged restructuring, on the ground that "the payoffs to Santopietro and Donnarumma were made with cash generated by structured transactions." We agree that the harm identified by the district court in this instance was related to the structuring conviction.

After finding as a factual matter that "the payoff did occur," the district court stated:

... I find by a preponderance of the evidence that you were aware of and participated in this transaction and the method by which it was carried out. This in turn, Mr. Sisti, directly connects you to the generation of the money that was used for the payment of the illegal bribe, which led to the failed investment of the Waterbury Pension Fund. I find that this is related misconduct which led directly to the improper investment of the pension fund and its ultimate failure, which had a devastating effect on those people who did not assume the risk that their pension contributions would be invested in an investment vehicle as risky as those were.

In reaching this conclusion, Mr. Sisti, I find that the payoff of which you were a part and the resultant risky investment of the pension is an aggravating circumstance that the Sentencing Commission did not adequately, and I stress the word adequately, consider in formulating the guidelines. Further, I find that the resultant effect of this payoff and failed investment had on innocent investors existed to a degree not adequately considered by the Sentencing Commission in formulating the guidelines. Accordingly, I am departing upward on this ground.

■ We review de novo whether this factor, the extent of the harm resulting from the illegal use of the funds, was adequately considered by the Sentencing Commission. *See United States v. Williams,* 37 F.3d 82, 85 (2d Cir.1994). Although U.S.S.G. § 2S1.3(b) creates a two-level sentence enhancement for the illegal use of structured funds, a departure may still be warranted "if the court determines that, in light of unusual circumstances, the guidelines level attached to that factor is inadequate." U.S.S.G. § 5K2.0. Application note 10 of U.S.S.G. § 2F1.1 specifically acknowledges that an upward departure may be warranted where "the loss determined under [section 2F1.1(b)(1)] does not fully capture the harmfulness and seriousness of the conduct." *See United States v. Kaye,* 23 F.3d 50, 53–54 (2d Cir.1994); *United States v. Stouffer,* 986 F.2d 916, 928 & n. 16 (5th Cir.) (investors' loss of life savings not fully considered by dollar loss gradation of § 2F1.1), *cert. denied,* 510 U.S. 837, 919, 114 S.Ct. 115, 314, 126 L.Ed. 80, 261 (1993). In this case, we find that the degree of harm flowing from the illegal use of the structured funds—a "devastating" harm to shareholders of the pension fund—so far exceeded that anticipated by the Commission for that offense that an upward departure was appropriate.

■ Sisti also challenges the extent of the departure as unreasonable. In departing upward, a district court must explain the extent of its departure in light of its factual findings. *See Tropiano,* 50 F.3d at 164; *United States v. Thomas,* 6 F.3d 960, 964–65 (2d Cir.1993). In this case, the sentencing court stated:

In accordance with the law of this circuit, I will explain how I determined the extent of the departure. This is not an exact science. To determine that extent of the departure I consulted the case law and the guidelines. I also referred to the fraud table in Section 2F1.1 for guidance, keeping in mind the multi-count analysis suggested by *United States v. Alter,* 985 F.2d [105] (2d Cir.1993), and the considerations of *United States v. Tropiano,* 50 F.3d [157] (2d Cir.1995), as well as the amount of the loss occasioned by your activities in attracting the investors when you knew Colonial was failing, in using illegal means to obtain pension fund investments, and in

**316**

your misuse of funds through structured transactions.

■ In *Williams v. United States*, 503 U.S. 193, 194, 112 S.Ct. 1112, 1116, 117 L.Ed.2d 341 (1992), the Supreme Court stated that once the reviewing court has determined that the sentencing court properly decided to depart upward, the court of appeals "may affirm the sentence as long as it is also satisfied that the departure is reasonable under [18 U.S.C.] § 3742(f)(2)." To that end, we should consider "the amount and extent of the departure in light of the grounds for departing." *Id.* We have little difficulty in concluding that the bribery of high public officials to induce the investment of municipal pension funds into the defendants' fraudulent enterprise satisfies the reasonableness test for a seven-level departure. In our view, the reasons given by the district court are sufficient to justify the extent of the departure.

In conclusion, because we find that the defendant's conduct in connection with the Waterbury bribes, standing alone, was sufficiently related to the structuring conviction and the extent of the departure based on the bribes was reasonable, we have no need to review the other grounds separately cited by the sentencing court in support of the departure. *See United States v. Leonard,* 67 F.3d 460, 461 (2d Cir.1995) (per curiam).

We have considered Sisti's remaining contentions, find them to be without merit, and dispose of them in a summary order filed simultaneously with this opinion.

## CONCLUSION

For the foregoing reasons, we affirm Sisti's sentence in all respects. Googel's sentence is also affirmed with the sole exception that we reverse the two-level enhancement for obstruction of justice with respect to Counts One through Three. Accordingly, we vacate Googel's sentence and remand to the district court for resentencing in a manner consistent with this opinion.