**UNITED STATES of America,
Appellee,**

v.

**Robert VELEZ, Defendant–Appellant.**

**Docket No. 03–1008.**

United States Court of Appeals,
Second Circuit.

Argued: Nov. 24, 2003.

Decided: Feb. 6, 2004.

Timothy S. Driscoll, Assistant United States Attorney (Emily Berger, Assistant United States Attorney, on the brief), for Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Brooklyn, NY, for Appellee.

Lawrence D. Gerzog, Law Office of Lawrence D. Gerzog, Esq., New York, NY, for Defendant–Appellant.

Before: CALABRESI, B.D. PARKER, and RAGGI, Circuit Judges.

B.D. PARKER, JR., Circuit J.

Robert Velez appeals from a judgment of conviction of the United States District Court for the Eastern District of New York (Leonard D. Wexler, *Judge* ). Velez was sentenced principally to concurrent terms of 120 months and 63 months following his guilty plea to two counts of conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951. The principal issue raised on this appeal is whether, under the conspiracy sentencing guideline, U.S.S.G. § 2X1.1, a particularized finding of a defendant's intention to steal a certain amount is required in order to apply a loss adjustment contained in the substantive offense guideline, *id.* § 2B3.1. Because we conclude that such a finding is required and that the District Court did not make the requisite finding, we vacate the judgment and remand for resentencing.

## BACKGROUND

From December 1994 to November 1997, Velez participated in a conspiracy in which several bodybuilders committed four violent home invasion robberies at the residences of diner owners in Nassau and Queens Counties, New York. Velez and his associates targeted the diner owners because they believed the owners kept large sums of cash in their homes. During the robberies, Velez and the others typically wore ski masks and gloves, carried weapons, and bound and physically assaulted the victims and their families.

In October 2000, Velez joined a second robbery conspiracy, the goal of which was to steal cash from the vault of the Patriot Armored Car Service ("Patriot"), which collected and stored money for various businesses around Patchogue, New York. In furtherance of this conspiracy, Velez met with two associates at a restaurant in Patchogue, one of whom had previously worked for Patriot. At the meeting, the former Patriot employee discussed a plan to take a Patriot employee hostage and use the hostage to compel fellow employees to open Patriot's vault. After meeting, Velez and the others left the restaurant and drove by Patriot's premises, stopping at a convenience store to purchase gloves to use during the robbery. Upon returning to the restaurant, Velez and his associates were arrested. Government agents subsequently learned that Patriot had $5,000,000 in its vault on the day of the planned robbery.

After his arrest, Velez cooperated with the government and subsequently pleaded guilty to two counts of conspiracy to commit robbery in violation of 18 U.S.C. § 1951. The first count involved three of the four home robberies and the second count involved the unconsummated Patriot robbery.

At sentencing, the District Court adopted the findings of the Presentence Report ("PSR"), which had calculated, after grouping the three robberies of the first count as well as the Patriot robbery of the second count under U.S.S.G. § 3D1.1, Velez's adjusted offense level as 32 and his criminal history category as III. This resulted in a guideline range of 151–188 months. The offense level was computed, in part, by applying a 6–level enhancement to the offense level for the Patriot robbery conspiracy based on the fact that $5,000,000 was found in the vault after Velez and his co-conspirators were arrested. *See* U.S.S.G. §§ 2X1.1, 2B3.1(b)(7)(G).[1] On the basis of Velez's cooperation, however, the Court reluctantly granted the government's departure

---

1. Had no loss enhancement applied to the Patriot robbery, Velez's adjusted offense level would have been 31 and his guideline range 135–168 months.

motion under U.S.S.G. § 5K1.1 and sentenced Velez principally to concurrent imprisonment terms of 120 months on the home invasion robberies conspiracy count and 63 months on the Patriot robbery conspiracy count.[2] Velez appeals.

## DISCUSSION

▮▮▮ Velez contends that, because the Patriot robbery was not completed and there was no actual loss, the District Court erred by (1) failing to apply a 3–level reduction to the Patriot robbery conspiracy offense level, under section 2X1.1(b)(2) of the Sentencing Guidelines, for an uncompleted conspiracy; and (2) applying a 6–level enhancement for a loss of more than $2,500,000 (but not more than $5,000,000) under section 2B3.1(b)(7)(G). We review a district court's legal interpretations of the Sentencing Guidelines *de novo* and the factual findings supporting its offense level calculations for clear error. 18 U.S.C. § 3742(e); *United States v. McSherry*, 226 F.3d 153, 157 (2d Cir.2000).

To determine the offense level for a conspiracy, a sentencing court must look to "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." U.S.S.G. § 2X1.1(a). The base offense level for robbery is 20. *Id.* § 2B3.1(a). That offense level is reduced by 3 levels "unless . . . the circumstances demonstrate that the conspirators were about to complete all [the acts the conspirators believed necessary on their part for the successful completion of the robbery] but for apprehension or interruption by some similar event

beyond their control." *Id.* § 2X1.1(b)(2). On the other hand, the base offense level under section 2B3.1 is enhanced by the amount of the loss. If the loss is more than $2,500,000, but not more than $5,000,000, 6 levels are added. *Id.* § 2B3.1(b)(7)(G). Here, the District Court applied the 6–level enhancement after finding both that Velez intended to rob a vault that contained a "substantial" amount of cash and that $5,000,000 was subsequently found in the vault. Tr. of Dec. 10, 2002 at 5–6, 12.

As noted, Velez argues that the District Court erred by failing to reduce his offense level by 3 points for the Patriot robbery conspiracy under section 2X1.1(b)(2) since that crime was never completed. He further contends that the Court erred by applying the 6–level enhancement for an intended loss of $5,000,000 under section 2B3.1(b)(7)(G) because the intended loss was not properly determined. The government maintains that Velez is not entitled to the 3–level reduction because it is undisputed that he and his co-conspirators were about to complete the Patriot robbery had they not been apprehended by law enforcement officers, an event beyond Velez's control. The government also claims that the Court correctly imposed the 6–level enhancement because there was sufficient evidence to support a finding that the intended loss was $5,000,000, the amount subsequently found in the vault. For support, the government cites section 2X1.1(a), which provides that an adjustment is appropriate "for any intended offense conduct that can be established with reasonable certainty." It then points out that the undisputed

---

2. The District Court made plain its reluctance to grant any departure in light of the brutality involved in the home invasion robberies:

I read this probation report and I was annoyed. How dare you go into someone's home with a gun, ski ma[s]k, tie them up,

hit them with a gun and then continue on with other crimes, and the daughter walks in and you grab her and you tie her up in their home, and you want leniency from me? I should throw you in jail for life. Tr. of Dec. 10, 2002 at 11–12.

evidence shows that Velez joined a conspiracy to rob a business that collected and stored cash, the conspiracy was spearheaded by a former employee of that business, the robbery was planned to coincide with a day on which Patriot received significant deposits, and there was $5,000,000 in the vault on the day of the planned robbery.

We find no error in the District Court's refusal to apply the 3–level reduction under section 2X1.1(b)(2). That section expressly instructs the sentencing court not to impose the reduction where "the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control." *Id.* § 2X1.1(b)(2); *see also id.* § 2X1.1, Background (Where the substantive offense is "prevented on the verge of completion by the intercession of law enforcement authorities ... no reduction of the offense level is warranted."). Those circumstances are present here. The PSR states that "the circumstances demonstrate" that Velez and his co-conspirators "were about to complete the robbery [of Patriot] had they not been arrested." PSR ¶ 20. Velez has not objected to any of the facts contained in the PSR regarding the planning, attempted execution, or termination of the Patriot robbery conspiracy. Nor can he dispute that the arrest was beyond his control. Given these facts, we conclude that the District Court did not err in refusing to apply the 3–level reduction.[3]

■ However, we also conclude that the District Court's finding that Velez specifically intended to steal a "substantial" amount was insufficiently grounded in the record to warrant a 6–level enhancement under section 2B3.1(b)(7)(G). Application Note 2 to section 2X1.1 states that the only "specific offense characteristics" from the guideline for the substantive offense that apply are those that are determined to have been "specifically intended" or "actually occurred." *Id.* § 2X1.1, cmt. n. 2. The note goes on to caution that "[s]peculative specific offense characteristics will not be applied." *Id.* To illustrate impermissible speculation, the commentary provides an example that shares a striking resemblance to the facts of this case: "[I]f two defendants are arrested during the conspiratorial stage of planning an armed bank robbery, the offense level ordinarily would not include aggravating factors regarding ... *obtaining a large sum of money,* because such factors would be speculative." *Id.* (emphasis added). Instead of applying the enhancement in such a case, the offense level "would simply reflect the level applicable to robbery of a financial institution." *Id.*

■ The commentary supplies additional guidance for inchoate crimes. As it cautions, "the base offense level will be the same as that for the substantive offense[,] *[b]ut* the *only* specific offense characteristics from the guideline for the substantive offense that apply are those that are deter-

---

**3.** Velez additionally argues that the District Court "failed to address" at sentencing whether section 2X1.1(b)(2) applied, and for that reason alone we should find error. However, because the Court properly denied the reduction on the basis of the calculations and underlying facts set forth in the PSR, which the Court expressly adopted, we find no error in this regard. *See United States v. Martin,* 157 F.3d 46, 50 (2d Cir.1998) ("A sentencing court satisfies its obligation to clearly resolve disputed sentencing issues if it indicates, either at the sentencing hearing or in the written judgment, that it is adopting the recommendations of the probation officer in the PSR. While the district court could have been more explicit, it plainly intended to adopt the PSR's findings on relevant conduct.... We will not remand where the court's intention is plain from the record." (internal quotation marks and citations omitted)).

mined to have been specifically intended or actually occurred." *Id.* (emphasis added). In light of this express instruction we cannot equate a broad finding that a defendant "specifically intended" a loss of a "substantial" amount of money with the requisite finding under section 2B3.1(b)(7)(G), that he "specifically intended" a loss of "more than $2,500,000" especially since other sums—e.g., $800,000 or $1,500,000—that would trigger smaller adjustments could by any rational calculus be considered "substantial" amounts. We therefore hold that, in imposing a sentence under section 2X1.1 on a conspiracy conviction, a district court must make appropriate findings of the defendant's intention to cause a loss falling into a particular range delineated by section 2B3.1(b) before it may apply an enhancement under that guideline.

We note that the record before us evidences that the conspiracy was spearheaded by a former employee, that the robbery was planned for a day when the business would have considerable cash on hand, that Velez knew the amount of money in the vault that day was "substantial," and that $5,000,000 was discovered in the Patriot vault after Velez and the others were arrested. Indeed, the magnitude of the intended loss is revealed by the fact that Velez's plan was not simply to hijack one armored car and steal its contents; his target was the company vault. In light of the fact that a district court, in considering whether a defendant acted with the requisite intent for the purposes of applying a Guidelines enhancement, may properly draw all reasonable inferences from the relevant circumstances, *see United States v. Sisti*, 91 F.3d 305, 313 (2d Cir.1996), and

that its finding need be made only by a preponderance of the evidence, *see United States v. Thorn*, 317 F.3d 107, 117 (2d Cir.2003), we do not preclude that, on the instant record, the requisite finding of a specific intent to cause a loss in excess of $2,500,000 could be made. But the fact remains that the District Court, in the first instance, has not made that requisite finding. Accordingly, we vacate the judgment and remand for resentencing.[4] We, of course, express no position on the resolution of this issue on remand. Neither do we intrude on the District Court's discretion to decide on the appropriate departure should it calculate the Sentencing Guidelines more favorably to Velez on remand.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court is vacated, and this case is remanded for resentencing.

---

**4.** Velez also contends that he received ineffective assistance of counsel because his trial attorney failed to press legitimate objections to the Guidelines calculations at sentencing and waived hearings on the objections. In light of our remand, we find it unnecessary to address this issue on this direct appeal. *See United States v. Romano*, 314 F.3d 1279, 1282 n. 3 (11th Cir.2002); *United States v. Khedr*, 343 F.3d 96, 99–100 (2d Cir.2003).