UNITED STATES of America,
Appellee,

v.

Wayne Michael McKAY, Defendant–
Appellant,

and

Charmaine Marie Dillon, Defendant.

Docket No. 98–1527.

United States Court of Appeals,
Second Circuit.

Argued by Appellant, and Submitted
by Appellee: March 23, 1999.

Decided: June 7, 1999.

Thomas J. Eoannou, Buffalo, New York,
for Defendant–Appellant.

George C. Burgasser, Buffalo, NY, Assistant United States Attorney for the Western District of New York (Denise E. O'Donnell, United States Attorney for the Western District of New York, of Counsel), Jamin Alabiso, Student Intern, on the brief, for Appellee.

Before: FEINBERG, PARKER and SACK, Circuit Judges.

FEINBERG, Circuit Judge:

Defendant Wayne Michael McKay appeals from a sentence of 46 months imprisonment imposed by the United States District Court for the Western District of New York, Richard J. Arcara, J., after his plea of guilty to conspiracy to commit money laundering with intent to promote the distribution of marijuana. The district court applied a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 because of false statements McKay made to a United States Probation Officer concerning his role in the underlying marijuana distribution activities. On appeal, McKay argues that his statements did not constitute obstruction of justice for purposes of § 3C1.1 and seeks a remand for resentencing. For the reasons stated below, we affirm the judgment of the district court.

## I. Background

After several months of investigation into suspected narcotics trafficking and money laundering activities in the Niagara Falls area, McKay was arrested by agents of the United States Customs Service in September 1996. The government filed an indictment charging him with three violations of narcotics laws involving the possession and distribution of marijuana. At his original debriefing, McKay stated that he was merely a middle man in a marijuana distribution organization led by Lodgerica Barnswell. He made the same claim in his testimony to a grand jury in December 1996.

1. McKay is a citizen of Jamaica.

In February 1997, McKay pleaded guilty to a one-count superseding information charging him with conspiracy to commit money laundering with intent to promote the distribution of marijuana, in violation of 18 U.S.C. § 1956(a)(2)(A) and 18 U.S.C. § 1956(h). During his presentence interview 12 days later, McKay again stated—this time to United States Probation Officer David W. Ball—that Barnswell was the leader of the organization and that his own role was limited. He repeated his claim that he was a middle man working for and at the direction of other individuals. According to McKay, those individuals had rented an apartment in Niagara Falls and paid him between $800 and $1500 per shipment to receive packages of marijuana there. As for money laundering, McKay stated that he was directed by other individuals to transfer funds between western New York and various other locations, and that the transfers facilitated the drug distribution.

On the basis of this information, the presentence report (PSR) recommended that McKay be assigned a total offense level of 19. Included in this computation was a two-level reduction under U.S.S.G. § 3B1.2 for McKay's minor role in the money laundering, a three-level reduction under U.S.S.G. §§ 3E1.1(a) and (b) for his acceptance of responsibility, and a two-level reduction under U.S.S.G. § 5K2.0 in exchange for his stipulation to an order of deportation which would be carried out at the end of his incarceration.[1] With his criminal history category of I, this offense level would result in a guideline imprisonment range of 30 to 37 months.

Meanwhile, McKay's grand jury testimony had assisted the government in obtaining a one-count indictment in August 1997 charging Barnswell with a narcotics offense. The investigation following Barnswell's arrest revealed that, contrary to McKay's repeated prior assertions, McKay was in fact the leader of the marijuana

distribution scheme. In light of this new information, Ball re-interviewed McKay in November 1997. McKay admitted that he had misled Ball during his February 1997 presentence interview. He claimed that he had acted on the advice of his prior attorney, who had advised him to minimize his role; McKay stated that he was now "coming clean." He then related a version of events quite different from the one he had previously told to Ball. McKay stated that he would have co-defendant Charmaine Dillon forward marijuana to him, which he would then sell in Niagara Falls. McKay would also provide marijuana to Barnswell, who would pay him after it was sold. McKay added that he would often receive marijuana on consignment and, upon selling it, would send funds to California. He claimed that he earned approximately $25 to $50 profit per pound of marijuana sold. Finally, he acknowledged that he was the one who obtained the apartment in Niagara Falls where marijuana shipments were received, and that he used a fictitious name to do so.

Ball prepared a revised PSR in February 1998 recommending that McKay be assigned an adjusted offense level of 26. Included in this computation was a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 based on the "materially false information" McKay provided to the Probation Office during his initial presentence interview. The reductions for a minor role under U.S.S.G. § 3B1.2 and for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b) were no longer recommended. With McKay's criminal history, the new total offense level of 26 would result in a guideline imprisonment range of 63 to 78 months.

Thereafter, in a meeting with the United States Attorney's Office and the Probation Office, McKay objected to the suggested enhancement for obstruction of justice and the elimination of a reduction for acceptance of responsibility. In a July 1998 addendum to the revised PSR, Ball stated that "based upon defense counsel's arguments and supportive case law ... the obstruction of justice enhancement may not apply." Ball remained convinced, however, that McKay was not entitled to a reduction for acceptance of responsibility for the money laundering charge because he had lied about his role in the marijuana distribution. No longer advocating a § 3C1.1 enhancement for obstruction of justice, the addendum recommended a total offense level of 24 which, with McKay's criminal history, would result in a guideline imprisonment range of 51 to 63 months. The recommendations of the revised PSR were otherwise unchanged by the addendum.

Judge Arcara held sentencing hearings in July and August 1998. There were no objections to the facts contained in the revised PSR, which the district court adopted as its findings of fact. The court heard extensive argument on whether McKay's false statements to the Probation Office warranted application of the § 3C1.1 enhancement. The judge noted that while McKay's lies concerned drug distribution rather than money laundering, McKay began lying when he was still under indictment for the former. The judge further noted that the superseding information charging McKay with money laundering also referred to the distribution of marijuana. The judge accordingly felt that the offenses were closely intertwined. At the close of the August hearing, the judge found that because McKay's misstatements were willful, material and made during the sentencing phase of the offense, the two-level enhancement for obstruction of justice was warranted. This brought McKay to an offense level of 23 and a guideline imprisonment range of 46 to 57 months. The judge then sentenced McKay to 46 months imprisonment, which he is currently serving. The court further ordered that upon his release he be deported to Jamaica pursuant to 18 U.S.C. § 3583(d).

On appeal, McKay argues only that the district court's application of the obstruction of justice enhancement under U.S.S.G. § 3C1.1 was error. He seeks a remand for resentencing.

## II. Discussion

### A. Applicable Guideline and Standard of Review

■ When McKay was sentenced in August 1998, section 3C1.1 of the Sentencing Guidelines stated that

[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

As an example of conduct falling within this provision, Application Note 3(h) to § 3C1.1 specifically listed "providing materially false information to a probation officer in respect to a presentence or other investigation for the court." Application Note 5 defined "material" information as information that, "if believed, would tend to influence or affect the issue under determination." On appeal, "[t]he sentencing court's findings as to what acts were performed, what was said, what the speaker meant by [his] words, and how a listener would reasonably interpret those words will be upheld unless they are clearly erroneous." *United States v. Cassiliano*, 137 F.3d 742, 745 (2d Cir.1998) (citing *United States v. Shoulberg*, 895 F.2d 882, 884 (2d Cir.1990); *United States v. Stroud*, 893 F.2d 504, 506–07 (2d Cir.1990)). A ruling that established facts constitute obstruction of justice under the Sentencing Guidelines is a matter of legal interpretation and is reviewed *de novo*. See *Stroud*, 893 F.2d at 507.

### B. Obstruction of Justice with Respect to the "Instant Offense"

The "instant offense" in this case is the offense to which McKay pleaded guilty— money laundering. For purpose of analysis, it may be helpful to note that conceptually a defendant's lie regarding criminal conduct other than the instant offense can be viewed in different ways when the lie is made to a probation officer preparing a PSR on the instant offense. Depending on its content and the context in which it is made, such a lie can be regarded as an attempt by the defendant to affect (1) the sentence on the instant offense, or (2) the prosecution and investigation of the criminal activity that is described in the lie or, (3) possibly both. In this case, it is clear that the district judge viewed McKay's lies as falling within category (1). The court reasoned that McKay's false statements to Probation Officer Ball minimizing his role in the marijuana distribution were "materially false" because, pursuant to Application Note 5, they "would tend to ... affect the issue under determination" (McKay's sentence for the "instant offense" of money laundering) if believed. The court further reasoned that because the statements were willful and made during the sentencing investigation of the instant offense, § 3C1.1 applied.

■ The court's determination that McKay willfully provided false information to a probation officer was clearly justified. It is equally clear that McKay's lies were material. McKay claimed that his role in the organization was limited when in fact he ran it. Whether McKay was laundering drug money as a peripheral participant in a narcotics ring or as the leader of that ring was a highly relevant sentencing inquiry for the district court. Whether McKay benefitted principally or only in small part from the money laundering was equally relevant. Indeed, the original PSR recommended a two-level reduction under U.S.S.G. § 3B1.2 for McKay's claimed minor role in the money laundering. That recommendation was dropped in the revised PSR prepared after McKay's lies came to light, and the district court agreed.

The court's § 3C1.1 enhancement is supported by our decision in *United States v.*

*Rodriguez*, 943 F.2d 215 (2d Cir.1991). In that case, we held that a defendant's false statement to his probation officer "that he had no prior record, when in fact he had been arrested and convicted six times previously," *id.* at 217, constituted obstruction of justice under § 3C1.1. The statement was made willfully during the sentencing phase of the instant offense in that case, and was material because "[t]he presence or lack of a criminal history would affect the [defendant's] sentence." *Id.* Accordingly, the enhancement was proper. See *id.* Here, McKay's statements were made willfully during the sentencing phase of the instant offense of money laundering and were material because, as the district court noted, the extent of McKay's role in the distribution organization would have affected his sentence for laundering the proceeds of that organization. Thus, an enhancement was warranted in this case as well.

Also relevant is our recent opinion in *Cassiliano*. There, defendant Cassiliano agreed in December 1992 to cooperate with the government's investigation of a fuel tax evasion scheme; as part of the agreement, Cassiliano was to plead guilty to wire fraud. See *Cassiliano*, 137 F.3d at 744. While the broad investigation was ongoing, she alerted one of the government's principal targets (Hercules) that he too was under investigation. See *id.* at 744, 746. Hercules knew of Cassiliano's wire fraud and was a possible source of evidence against her. See *id.* at 746. After Cassiliano pleaded guilty to wire fraud several years later, the district court held that her warning to Hercules constituted obstruction of justice and enhanced Cassiliano's sentence under § 3C1.1. We affirmed, holding that because her conduct was willful, occurred during the government's further investigation of her own wire fraud offense as well as that of Hercules, and could have impeded the investigation of her offense, the enhancement was warranted.

McKay's principal argument on appeal appears to be that willfully false statements made by a defendant to a probation officer during the sentencing phase of the defendant's instant offense, which would have affected the sentence for that offense if believed, cannot as a matter of law trigger a § 3C1.1 enhancement if the lies concern conduct other than the instant offense.

McKay relies heavily on our decision in *United States v. Perdomo*, 927 F.2d 111 (2d Cir.1991). In that case, defendant Perdomo pleaded guilty to one count of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a), (b) and 846 arising out of a drug transaction that occurred in July 1988 (the July conspiracy). See *id.* at 113. The subsequent PSR listed, among other things, "five instances of obstruction of justice" by Perdomo and recommended a § 3C1.1 enhancement in his sentence for the instant offense (the July conspiracy). See *id.* at 117 n. 3. The district court followed that recommendation. On appeal, we vacated the sentence and remanded the case. See *id.* at 118. As to three of the five listed obstructions of justice, we held that willfulness had not been proved by a preponderance of the evidence. As to the other two instances, we held, with little discussion, that they did not justify a § 3C1.1 enhancement because they involved "conduct beyond the charged offense." *Id.* at 117. Both instances related to a cocaine conspiracy that occurred in March 1988 (the March conspiracy), wholly separate from and four months prior to the July conspiracy that constituted the instant offense. See *id.* at 113. In one (instance (1)), Perdomo had attempted to dispose of the cocaine involved in the March conspiracy before law enforcement agents arrived at the scene. In the other (instance (2)), he told a probation officer that he had called the potential customer of the March conspiracy only a few times, and only to ask for his assistance in bringing Perdomo's wife to the United States or Canada, when he had in fact called the potential customer many times and for the

purpose of drug trafficking. See *id.* at 117 n. 3. McKay stresses that in *Perdomo* we held that these two alleged instances of obstruction of justice could not trigger a § 3C1.1 enhancement because they concerned an offense (the March conspiracy) other than the instant offense in that case (the July conspiracy). Therefore, McKay's argument apparently goes, his own lies to a probation officer about "conduct beyond the charged offense" of money laundering cannot justify a § 3C1.1 enhancement. We disagree.

█ First, the specific issue now before us—materially false statements made by a defendant to a probation officer during the *sentencing* phase of the instant offense in an attempt to affect the *sentence* for that offense—was not the focus of the court's attention in *Perdomo.* Instance (1) was not an attempt by Perdomo to influence his sentence on the July conspiracy. Instance (2) probably was, but when *Perdomo* was argued in September 1990, the plain language of § 3C1.1 applied only to obstructions of the "investigation or prosecution of the instant offense," not to the "investigation, prosecution, or *sentencing* of the instant offense." (emphasis supplied).[2] Understandably, the government did not argue in its brief in *Perdomo* that even though Perdomo's materially false statements to the probation officer in instance (2) concerned conduct other than the instant offense, they were an attempt to affect Perdomo's *sentence* for the instant offense, would have affected the sentence if believed, and thus constituted obstruction of justice under § 3C1.1. Instead, the government argued that the March events and the July events were all part of the same ongoing conspiracy so that Per-

domo's conduct and lies relating to the March events did not, as Perdomo claimed, relate only to "conduct outside of the offense of conviction" and therefore could justify a § 3C1.1 enhancement. This argument, however, was unpersuasive given that the indictment in *Perdomo* listed only the July events as Perdomo's instant offense, and the court in *Perdomo* rejected it. Unlike the situation here, the court in *Perdomo* was simply not asked to consider—and apparently did not—whether Perdomo's lies about conduct other than his instant offense, were an attempt to obstruct the *sentencing* of his instant offense.[3] In this case, however, the government did argue—and the district court so ruled—that McKay's lies about his role in the drug distribution scheme were obviously an attempt to obstruct justice in his *sentencing* for the instant offense (money laundering). Thus viewed, McKay obstructed justice under the language of § 3C1.1.

Second, decisions of this court after *Perdomo* indicate that it does not justify reversal of the district court here. *Rodriguez,* which was decided about six months after *Perdomo,* is flatly contrary to McKay's argument. In *Rodriguez,* defendant's lies were about conduct other than the instant offense but nevertheless justified a § 3C1.1 enhancement. See 943 F.2d at 217. *Cassiliano,* also decided after *Perdomo,* is instructive as well, although the obstruction of justice there was not a lie about prior criminal conduct that could have affected a sentence, but a warning to a co-conspirator that could have impeded an investigation. Cassiliano's argument on appeal was that "alerting Hercules that he

2. Compare U.S. Sentencing Guidelines Manual § 3C1.1 (1989) with U.S. Sentencing Guidelines Manual § 3C1.1 (1990). See also U.S. Sentencing Guidelines Manual Appendix C, Amendment 347 at 156 (1997). The word "sentencing" was not added to the Guideline until November 1990. See *id.* at 158.

3. That the court in *Perdomo* did not focus on the *sentencing* of the instant offense in that

case is also borne out by the concluding sentences of the court's brief analysis:

In § 3C1.1 "offense" is modified by "instant." Any interpretation other than that § 3C1.1 refers to efforts to obstruct the *prosecution* of the conviction offense only would render this modifier meaningless. (emphasis supplied).

927 F.2d at 118.

was a target is not within the scope of § 3C1.1 because Hercules's wire fraud offense could not be deemed the 'instant offense'", i.e., Cassiliano's wire fraud. *Cassiliano,* 137 F.3d at 745–46. We held in *Cassiliano* that even though her obstructive conduct involved an offense other than the instant offense (her own wire fraud), it nevertheless had, under the facts of her case, "the potential for impeding the investigation not only of Hercules's offense but of her own as well." *Id.* at 746.[4] Similarly, even though McKay's lies to the probation officer about the marijuana distribution scheme were about an offense other than the instant offense (money laundering), the lies had the potential to impede—and indeed, would have, if believed, impeded—the imposition of an appropriate sentence on McKay for the instant offense.

In sum, based upon our own precedents and the language of § 3C1.1, the district court here justifiably imposed the § 3C1.1 enhancement on McKay because his lies were an attempt to obstruct the sentencing phase of his instant offense.

## C. Recent Amendment to § 3C1.1

We think it is also instructive to note a November 1, 1998 amendment to § 3C1.1, which became effective a few months after McKay pleaded guilty. The amendment suggests that the Sentencing Commission never intended that § 3C1.1 be read in the limited manner that McKay claims is required.[5] Section 3C1.1, as amended, now states:

> If *(A)* the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during *the course of* the investigation, prosecution, or sentencing of the instant offense *of conviction, and (B) the obstructive conduct related to (i) the defen-*

> *dant's offense of conviction and any relevant conduct; or (ii) a closely related offense,* increase the offense level by 2 levels.

U.S. Sentencing Guidelines Manual § 3C1.1 (1998). The emphasized language is new. The Sentencing Commission has explained the reasoning behind this amendment as follows:

> The purpose of this amendment is to clarify what the term "instant offense" means. . . . This amendment resolves a circuit conflict on the issue of whether the adjustment applies to obstructions that occur in cases closely related to the defendant's case or only those specifically related to the offense of which the defendant is convicted. [comparing cases]. . . . The amendment, which adopts the majority view, instructs that the obstruction must relate either to the defendant's offense of conviction (including any relevant conduct) or to a closely related case.

U.S. Sentencing Guidelines Manual Supplement to Appendix C, Amendment 581 at 14–15 (1998). *Perdomo* is among the cases identified by the Commission as representing the minority view on this issue. If we were to apply the amendment to McKay on the theory that it "only clarif[ied] a meaning that was fairly to be drawn from the original version," see *United States v. Guerrero,* 863 F.2d 245, 250 (2d Cir.1988); cf. *United States v. Capers,* 61 F.3d 1100, 1110–12 (4th Cir.1995) (citing the "reasoning" of *Guerrero* with approval), the enhancement here would clearly be justified. McKay laundered the profits of the marijuana distribution that he lied about. The benefit he received from the money laundering correlated directly with the extent of his role in the distribution network. After his original indictment for the marijuana distribution, he pleaded guilty to conspiracy to commit money laundering

---

4. It is worth noting that Judge Walker, the author of our opinion in *Perdomo,* was a member of the panel in *Cassiliano.*

5. Neither party mentioned the amendment in their briefs or at oral argument. We therefore asked for and received supplemental letter briefs from counsel on the effect of the amendment on this case.

with intent to promote that distribution. The money laundering and marijuana distribution were clearly part of the same scheme. It is hard to think of more "closely related offense[s]." On that theory, if the current version of § 3C1.1 applied to McKay, we could have easily affirmed the decision of the district court. However, we need not—and do not—apply the amendment retroactively to McKay. As already pointed out, we reach the same result in this case without it because McKay's lies to his probation officer obstructed the sentencing phase of his instant offense.

### D. Obstruction of Justice and Denials of Guilt

■ McKay also argues that even if he provided materially false information to a probation officer during the sentencing phase of the instant offense, his statements fall within the exception to § 3C1.1 created by what was, at the time of McKay's sentencing, Application Note 1. Application Note 1 (now Application Note 2, see U.S. Sentencing Guidelines Manual § 3C1.1 (1998)) stated in part that the Guideline

> is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision.

U.S. Sentencing Guidelines Manual § 3C1.1 (1997). We have construed this language to provide broader protection to defendants than the Fifth Amendment. See *United States v. Johns*, 27 F.3d 31, 34 (2d Cir.1994). Stating that we could see "no principled basis for distinguishing between laconic noes and the same lies expressed in full sentences," *id.* at 35, we held in *Johns* that § 3C1.1 did not apply to simple denials of guilt as to unindicted crimes. In *Johns*, the relevant denials took the form of false statements of "No" and words to the effect of "I never purchased cocaine from Villone." See *id.* However, we went out of our way to "stress that the scope of this protection is relatively narrow." *Id.* We noted that "Application Note 1's concern is with protecting a defendant from exposing himself to *additional* criminal charges," *id.* at 36, and that the "clear," *id.*, language of the Note is that "absent perjury, a defendant may not suffer an increase in his sentence solely for refusing to implicate himself in illegal activity." *Id.*

McKay argues that his false statements were nothing more than simple denials of guilt as to uncharged crimes and, as such, preclude an enhancement for obstruction of justice. In fact, the Probation Office withdrew its recommended § 3C1.1 enhancement because it felt that McKay was correct on this point. We disagree. McKay did not simply deny his guilt or "refus[e] to implicate himself in illegal activity"—instead, he concocted a story that admitted guilt but reversed the roles he and another individual played in a crime in order to obstruct the government's determination of an appropriate sentence. We noted in *Johns* that "if someone in [defendant's] shoes were to say 'John Smith did it, not me,' when in fact John Smith was not involved, such a statement, we think, would be more than a simple denial of guilt and could be treated as an obstruction of justice...." *Id.* at 35 (quoting *United States v. Surasky*, 976 F.2d 242, 245 n. 2 (5th Cir.1992)). This is essentially what McKay did. Accordingly, we conclude that the district court correctly decided that the Application Note 1 exception did not apply.

### Conclusion

We have considered all of McKay's arguments, and find that they do not justify reversal. We conclude that (1) even though McKay's false statements concerned an offense other than the instant offense, they were properly considered obstruction of justice under U.S.S.G. § 3C1.1 because they were lies to a probation officer during the sentencing phase of the

instant offense that, if believed, would have affected the sentence; and (2) the false statements were not simple denials of guilt and thus did not fall within the then-Application Note 1 exception to § 3C1.1. The judgment of the district court is, therefore, affirmed.